Donald E. GHIDONI, Appellant,

v.

STONE OAK, INC., Hill Country Water-
works, Co., Hill Country, S.A. Ltd., and
Nancy J. Ghidoni–Meehan, Appellees.

No. 04–94–00837–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 28, 1998.

Rehearing Overruled March 16, 1998.

Sharon E. Callaway, Crofts, Callaway & Jefferson, P.C., San Antonio, for Appellant.

Ron D. Ross, San Antonio, Kathleen W. Foster, Godwin & Carlton, P.C., Dallas, Seagal V. Wheatley, Bradley S. Wilder, Jenkens & Gilchrist Groce, Locke & Hebdon, San Antonio, for Appellees.

Before HARDBERGER, C.J., and RICKHOFF, LÓPEZ, STONE, GREEN,[1] DUNCAN, ANGELINI and ANTONIO G. CANTU,[2] JJ.

### OPINION ON APPELLEES' MOTION FOR REHEARING EN BANC

RICKHOFF, Justice.

The motion for rehearing *en banc* filed by appellees Stone Oak, Inc., Hill Country Waterworks Co., and Hill Country S.A., Ltd. on March 31, 1997 is granted. Our opinion and judgment of February 28, 1997 are withdrawn, and this opinion and judgment are substituted.

### FACTUAL AND PROCEDURAL HISTORY

Appellant, Donald E. Ghidoni ("Ghidoni"), appeals from a judgment entered in a suit involving a dispute over the rights to a portion of real property (lots 183, 184B, and 185B) located at or near 107 Bitters Road and U.S. Highway 281 in San Antonio, Bexar County, Texas (the "Property"). The dispute giving rise to the litigation underlying this appeal was the second dispute between the parties regarding the Property.

The crux of the first dispute was Ghidoni's right of first refusal to purchase the Property. Our record does not contain the documentation evidencing this right, but from other documentation in our record, we discern that the right of first refusal was granted in a lease (the "Ghidoni Lease") dated August 26, 1982, between the Tomerlin Es-tate, Clare Joy Campbell and Lori Jane Campbell, as lessors (collectively referred to herein as the "Campbells"), and Ghidoni, as lessee. On February 11, 1983, the Campbells entered into a second lease with Stone Oak (the "Campbell Lease"). The Campbell Lease appears to be for the same property; however, the Campbell Lease states that the lease is for "Lots 183 and those portions of 184B and 185B, not covered by" the Ghidoni Lease. In any event, the dispute regarding Ghidoni's right of first refusal resulted in a suit filed by Ghidoni against the Campbells and Stone Oak. This suit was settled on September 17, 1984, with the execution of a Compromise Settlement Agreement by Ghidoni, Stone Oak and the Campbells (the "CSA").

Under the terms of the CSA, Stone Oak continued to lease the Property from the Campbells; however, Stone Oak subleased all the Property to Ghidoni with the exception of three water well sites and certain easements. In addition, Stone Oak assigned its option to purchase the Property under the Campbell Lease to Ghidoni. In the event Ghidoni exercised the option, the CSA provided that he would become the Lessor under the terms of the Campbell Lease, and the property leased to Stone Oak would be limited to three water well sites and easements. The CSA also required Stone Oak to arrange for the company operating the water wells (which at the time of the CSA was Hill Country Water Works, Inc. ("HCWW")) to provide Ghidoni with 2,500,000 gallons of water each year at no charge. Finally, the CSA provided that Stone Oak could place no more than three water wells on the Property and required that the water wells comply with all Texas statutes, rules and regulations and not generate noise in excess of 50 decibels measured at the well site perimeter.

On December 17, 1986, Ghidoni exercised his option to purchase the Property. On February 15, 1991, Ghidoni and his wife, Nancy J. Ghidoni–Meehan ("Meehan"), were divorced. The divorce decree provided that they would be tenants in common in the

---

1. Justice Paul W. Green recuses himself and does not participate in this en banc opinion.

2. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

Property. In addition, the divorce decree separately provided that "all assignments of water leases are to be divided evenly between the parties. Such water leases are with Stone Oak." Ghidoni was named manager of the Property, and Meehan was to provide Ghidoni with a right of first refusal on the Property. On February 19, 1991, Meehan conveyed her interest in the Property to Ghidoni by special warranty deed.

On March 9, 1992, Ghidoni notified Stone Oak in writing that the noise from the well motor was in excess of the agreed noise level. Thereafter, Ghidoni hired an attorney who sent a second letter on June 9, 1992 notifying Stone Oak of the noise violation. The letter states:

> This [noise] covenant in the settlement agreement was incorporated into the lease and in my opinion a violation of this covenant is grounds for termination of the lease.... My client is currently contemplating whether he will exercise his right to terminate the lease based upon the breach of this covenant and will be in contact with you shortly regarding his decision. However, he is asserting his right to place you on notice that you are in breach of the covenant contained within the lease and is not hereby intending to waive his rights to terminate the lease based upon this breach.

On July 10, 1992, Stone Oak responded to Ghidoni's second letter stating that it was in the process of investigating the allegations and would respond upon completion of the investigation. The letter further states that landscaping had been undertaken in an effort to muffle the sound of the pump motor. In addition, the letter states that arrangements had been made to have the pump motor reworked to reduce the noise level and estimated that the work would be completed within 10 days to two weeks. Finally, the letter asserts that "[f]or purposes of this letter, the 'contract' means that certain Compromise Settlement Agreement dated September 17, 1984 between [the Campbells, Stone Oak and Ghidoni]."

On September 9, 1992, Ghidoni's attorney sent Stone Oak written notice of termination of the Campbell Lease. The notice states that the June 9, 1992 letter had placed Stone Oak on notice of its default under the lease which gave Stone Oak fourteen days in which to cure the default. The notice further states that additional noise level tests were conducted on August 17, 1992, and it was determined that the wells were operating in the range of 83–85 decibels. Therefore, since the default was not cured within fourteen days from June 9, 1992, Ghidoni was terminating the lease effective September 18, 1992.

On September 16, 1992, Stone Oak's attorney responded to Ghidoni's letter referencing an earlier conversation. The letter states that Stone Oak was unable to have the pump reworked in the time frame given in its July 10, 1992 letter because of scheduling problems and the high use of water in the months of July, August and September making maintenance difficult without impeding the pumping of water for the customers of HCWW. The letter further states that the pump motor would be reworked by September 18, 1992 after which noise level tests would be taken to determine whether additional steps were necessary to reduce the noise level. The letter concludes with a request that Ghidoni forbear from terminating the lease in order to reach an acceptable resolution.

On November 12, 1992, Ghidoni sent Stone Oak a letter reiterating that the lease had been terminated effective September 18, 1992, invoicing Stone Oak for equipment storage charges, and demanding payment for water withdrawn since September 19, 1992. Stone Oak replied by letter dated November 19, 1992, wherein Stone Oak states: "our position in this entire matter has been and continues to be that Stone Oak, Inc. is not in default under the Lease and as a result your attempts to terminate the same are of no force or effect from our standpoint." Stone Oak's letter further states that Stone Oak had contracted for the construction of a building around the well site to be completed within 60 days. This building was completed in December of 1992.

On December 12, 1992, HCWW employees discovered that a new lock had been installed on the gate to the Property, thereby preventing their access to the water wells. The

lawsuit underlying this appeal was then filed on December 22, 1992. On the same day, a temporary restraining order was issued by the trial court enjoining Ghidoni from taking any action to restrict or prevent Stone Oak's access to the Property or the wells pending further order of the court. On March 1, 1993, Ghidoni filed his original answer and counterclaims for breach of contract arising from the noise level default and for damages based on the value of the water removed after the lease was allegedly terminated.

On June 18, 1993, Meehan (Ghidoni's ex-wife) filed a plea in intervention in the suit filed by Stone Oak claiming an interest in the Property and the Campbell Lease based on the divorce decree. On July 30, 1993, Hill Country, S.A. Ltd. ("HCSA") also intervened in the lawsuit stating that it had purchased the assets of Stone Oak and HCWW, including Stone Oak's rights under the Campbell Lease.

On August 23, 1993, Ghidoni sent written notice to Stone Oak and HCSA that they were in default under the lease for failure to comply with all laws, rules and ordinances of federal, state, and municipal governments. Specifically, Ghidoni asserted that Stone Oak and HCSA were in violation of a Texas regulation requiring them to have a sanitary control easement around the water well locations. On October 4, 1993, Ghidoni notified Stone Oak and HCSA that the lease had been canceled for failure to cure the default referenced in the August 23, 1993 letter.

On October 15, 1993, HCSA sent Ghidoni a letter stating that it was renewing its request that Ghidoni agree to grant HCSA a sanitary control easement. This letter was apparently in response to Ghidoni's termination letter and a notice from the Texas Natural Resource Conservation Commission ("TNRCC") that Stone Oak needed to take remedial measures to correct certain deficiencies in the operation of the water wells, including obtaining a sanitary control easement. On November 22, 1993, HCSA sent Ghidoni a second request enclosing the documentation necessary to grant the sanitary control easement. On January 1, 1994, HCSA's attorney sent Ghidoni a letter demanding that Ghidoni provide "a written response by Thursday, January 27, 1994, stating specifically as to whether Mr. Ghidoni will grant to HCSA a sanitary control easement and under what conditions." On January 25, 1994, Ghidoni responded to HCSA's demand by offering to grant the easement for the sum of $5,000,000. On January 27, 1994, HCSA sent Ghidoni a letter rejecting his offer as unreasonable but stating that HCSA would be willing to consider a reasonable offer.

By letter dated February 3, 1994, HCSA notified the TNRCC of the foregoing negotiations. In response, the TNRCC notified HCSA that it would allow the continued use of the wells in the absence of the sanitary control easement provided that HCSA collect certain water samples for analysis and take further measures if the test results so dictated. Ghidoni then amended his answer and counterclaims to assert claims relating to the failure to obtain the sanitary control easements.

The parties went to trial on August 15, 1994. Ghidoni appeals from the judgment rendered therein and raises eighteen points of error. We will address the points in the order raised.

### MOTION TO DISQUALIFY

■ In his first point of error, Ghidoni contends the trial court abused its discretion in denying his motion to disqualify the law firm of Wheatley & Sharpe from representing HCSA. Ghidoni's contention rests on his allegations that he disclosed confidences regarding the suit underlying the instant appeal when he consulted with Wheatley & Sharpe to request representation in another matter. Therefore, Ghidoni concludes that Wheatley & Sharpe should have been disqualified from representing HCSA based on information allegedly disclosed in the preliminary consultation regarding the possible retention of the firm to represent Ghidoni in the other matter.

■ The first issue generally addressed by the Texas Supreme Court in reviewing questions relating to attorney disqualification based on prior access to confidences is whether the action in which disqualification is sought is substantially related to the matter

in which the confidences were allegedly disclosed. *See, e.g., National Medical Enterprises, Inc. v. Godbey,* 924 S.W.2d 123, 129 (Tex.1996)(addressing substantial relationship issue before analyzing attorney's duty to preserve confidences based on nature of prior relationship with movant); *NCNB Texas National Bank v. Coker,* 765 S.W.2d 398, 399–400 (Tex.1989). In order to prove a substantial relationship between two matters, the movant must produce "evidence of specific similarities capable of being recited in the disqualification order." *Coker,* 765 S.W.2d at 400. "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard." *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990). Furthermore, the movant may not rely upon conclusory statements but must "provide the trial court with sufficient information so that it can engage in a painstaking analysis of the facts." *J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris,* 776 S.W.2d 271, 278 (Tex.App.—Dallas 1989, orig. proceeding). "While a movant need not divulge any confidences, he must delineate with specificity the subject matter, issues and causes of action presented in [the] former representation." *Id.*

■ "Disqualification is a severe remedy." *Spears,* 797 S.W.2d at 656. In view of this severity and to discourage the use of motions to disqualify as a dilatory trial tactic, trial courts are required to "strictly adhere to an exacting standard when considering such motions." *Coker,* 765 S.W.2d at 400; *see also Spears,* 797 S.W.2d at 656. A trial court will only be reversed for refusing to order disqualification if it abuses its discretion. *Spears,* 797 S.W.2d at 656. Therefore, in reviewing the trial court's ruling, we must determine "whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner." *Metropolitan Life Ins. Co. v. Syntek Finance Corp.,* 881 S.W.2d 319, 321 (Tex.1994). We may not substitute our judgment for that of the trial court, and in resolving factual issues, we will reverse the trial court only if we determine the trial court could have made but one decision. *Id.; Walker v. Packer,* 827 S.W.2d 833, 839 (Tex. 1992); *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985); *J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Morris,* 776 S.W.2d at 280.

At the disqualification hearing, Ghidoni testified that he met with Mike Duffey, a member of the Wheatley & Sharpe law firm, in May of 1993. Ghidoni stated that he contacted the Wheatley & Sharpe firm because he was interested both in pursuing an inverse condemnation suit against Hill Country Village relating to a zoning dispute involving the Property and in changing attorneys in the Stone Oak suit. Ghidoni further testified that he discussed the specifics of the Stone Oak matter with Duffey and the strategy Ghidoni intended to pursue in that suit.

Duffey also testified at the hearing. Duffey denied that he discussed any strategies relating to the Stone Oak case with Ghidoni.

Within a few weeks after the meeting between Duffey and Ghidoni, Duffey notified Ghidoni by letter dated June 3, 1993 that the Wheatley & Sharpe firm was declining the representation. All the documents retained by Duffey were returned to Ghidoni in that letter. Although Duffey admitted that Ghidoni brought a folder of documents to the meeting, Duffey stated that he only reviewed and copied documents relating to the zoning/inverse condemnation case.[3] Ghidoni, on

---

3. At the hearing, the following documents were identified as those initially retained by Duffey but returned in the letter declining the representation:

1. Ghidoni's business card;
2. Letter dated February 9, 1993, relevant to zoning case and part of public record;
3. Letter dated January 22, 1993, from the Texas Water Commission relevant to zoning case;
4. Notes from Bexar County Public Works and City of San Antonio relevant to the zoning case;
5. Opinion of Fourth Court of Appeals dated September 21, 1991 in zoning case;
6. Letter dated February 13, 1993, from Ghidoni to Hill Country Village;
7. Letter dated March 8, 1993, from Hill Country Village relevant to septic tank permit necessary for zoning;

the other hand, asserted that other documents were discussed relating to the Stone Oak litigation. Wheatley & Sharpe was subsequently retained to represent HCSA in the Stone Oak litigation.

In view of the conflicting evidence presented at the disqualification hearing, we are unable to hold that the trial court abused its discretion in denying the motion to disqualify. The attorneys argued the proper standards, including the requisite substantial relationship requirement, at the hearing. Before making its ruling, the trial court posed the following questions:

> THE COURT: What—could you recall for me what evidence there was of a confidential nature specifically?
>
> MR. WALLIS: I believe Mr. Ghidoni testified that he told them specifically how he intended to handle the case with Stone Oak, what he wanted out of the case, or what he wanted to accomplish, the strategy that he hoped to use to accomplish that.
>
> THE COURT: And what was that?
>
> MR. WALLIS: I don't think that was stated specifically.

Therefore, it appears from the record that the trial court was acting in reference to the applicable guiding rules and principles. *See Metropolitan Life Ins. Co. v. Syntek Finance Corp.*, 881 S.W.2d at 321. In view of the conflicting testimony presented, we are un-

able to conclude that the trial court could have reached only one decision in resolving the substantial relationship issue. Ghidoni's first point of error is overruled.

## MODIFICATION OF CAMPBELL LEASE

In his second through sixth points of error, Ghidoni raises various complaints regarding the manner in which the trial court submitted the issue of whether the CSA modified the Campbell Lease.

■ Ghidoni initially contends that the issue regarding modification was a question of law to be resolved by the trial court. However, Ghidoni's contention is contrary to existing Texas Supreme Court precedent which states that "[w]hether a contract has been modified depends on the parties' intentions and is a question of fact." *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex.1986); *see also Adams v. Valley Federal Credit Union*, 848 S.W.2d 182, 189 (Tex. App.—Corpus Christi 1992, writ denied); *Greenbelt Electric Cooperative, Inc. v. Johnson*, 608 S.W.2d 320, 324 n. 7 (Tex.Civ.App.— Amarillo 1980, no writ). Ghidoni does not refer to *Hathaway* in his brief to provide any reason for this court's rejection of the holding therein, and we can discern no rational basis for refusing to follow the *Hathaway* holding.[4]

---

8. Document from Mayo Galindo, City Attorney for Hill Country Village, filed of record with district clerk of Bexar County;

9. Trial court's charge to the jury in zoning case; and

10. Judgment entered of record in zoning case on May 22, 1990.

4. The dissent indicates that we have misconstrued Texas law and the standard of review set forth in *Hathaway*. We, however, feel bound to follow existing precedent. The Texas Supreme Court cites *Coastal Plains Development Corp. v. Tech–Con Corp.* to support its statement in *Hathaway* that whether a contract is modified depends on the parties' intention and is a question of fact. In *Coastal Plains Development Corp. v. Tech–Con Corp.*, the court was determining the effect of a supplemental contract on the original contract. 531 S.W.2d 143, 149 (Tex.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). In that case, the trial court was the finder of fact, and the appellant did not contest the factual sufficiency of the trial court's findings. *Id.* at 148–49. The court stated that "whether or not the parties intended by their supplemental con-

tract to alter their respective obligations under the original contact was for the trial court to determine from their situation at that time and from all attending facts and circumstances reflecting upon their intent." *Id.* Thus, by citing *Coastal Plains* in support of its statement that modification is a fact question, the Texas Supreme Court implicitly approved the extension of this standard of review to a case involving two written contracts. *See also Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996) (noting that a court need not embrace a strained rule of construction); *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex.1987) (same); *San Antonio Machine & Supply Co. v. Allen*, 268 S.W. 532, 533 (Tex.Civ. App.—San Antonio 1925)(noting both rule of construction and jury issue as follows: "The question of construction of the written contract was purely one of law for the court, whereas the question of whether or not the parties intended to modify the agreement, as claimed by the appellee, was one of fact for the jury.")

In the alternative, Ghidoni contends that the jury question relating to the modification issue misstated the law, or if the question was properly submitted, Ghidoni complains that the jury's answer was against the great weight and preponderance of the evidence.

▆▆▆▆ The burden of proving that a contract has been modified is on the party asserting modification. *Adams,* 848 S.W.2d at 189. The party asserting contractual modification must prove that the other party had notice of the change and that the change was accepted. *Hathaway,* 711 S.W.2d at 229; *Adams,* 848 S.W.2d at 189; *Greenbelt Electric Cooperative, Inc. v. Johnson,* 608 S.W.2d at 324 n. 7. In order to prove that the other party had notice of the change, it must be shown that the other party had knowledge of the nature of the change. *Hathaway,* 711 S.W.2d at 229; *Greenbelt Electric Cooperative, Inc. v. Johnson,* 608 S.W.2d at 324 n. 7.

The trial court submitted the following question regarding modification:

### QUESTION NO. 1

Did the Compromise and Settlement Agreement modify the Lease?

You are instructed that in order to find that the CSA changed or modified the Lease that Ghidoni must prove from the evidence that:

1. The Stone Oak Plaintiffs knew that the 50 decibel level limitation was to be subject to the default clause of the Lease, and
2. The Stone Oak Plaintiffs accepted the modification based on such knowledge.

You are further instructed that merely because one party to the alleged change or modification agreed to it is not sufficient evidence, standing alone for you to answer that such change or modification occurred.

A comparison of the question as submitted and the aforecited precedent reveals that the question properly sets forth the elements Ghidoni was required to prove. Therefore, the jury question did not misstate the law.

▆▆▆▆ With regard to the jury's failure to find in favor of Ghidoni regarding modifi-

cation, the letters introduced into evidence relating to the noise level dispute present the parties' conflicting views regarding the modification issue. Although Ghidoni's letters assert that the noise level requirement was incorporated into the Campbell Lease, thereby making it subject to the default provisions therein, Stone Oak's letters reflect its understanding that the noise level requirement had not become a part of the Campbell Lease. Where conflicting evidence is presented regarding an issue, we are not called upon to reweigh the evidence; thus, the jury's verdict on such matters is generally considered to be conclusive. *Sanchez v. Guerrero,* 885 S.W.2d 487, 491 (Tex.App.—El Paso 1994, no writ); *Carney v. Roberts Inv. Co.,* 837 S.W.2d 206, 210 (Tex.App.—Tyler 1992, writ denied); *see generally* William Powers, Jr. & Jack Ratcliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L. REV. 515, 525–26 (1991). In view of the conflicting evidence presented at trial, we will not disturb the jury's finding.

Ghidoni's second through sixth points of error are overruled.

### BREACH OF CONTRACT ABSENT MODIFICATION

▆▆▆▆ In his seventh point of error, Ghidoni contends that the trial court erred in denying his motion for new trial because Ghidoni was entitled to have the jury consider his claims for breach of the CSA by excessive noise levels and breach of the Campbell Lease by failure to comply with state law regardless of whether the CSA modified the Campbell Lease. With regard to Ghidoni's contention that he was entitled to an issue regarding a breach of the CSA regardless of whether the CSA modified the Campbell Lease, we note that Ghidoni did not request an issue regarding breach of the CSA independent of an asserted breach of the "original or modified lease." We further note that Ghidoni only pled that the "Ghidoni Lease" was breached by Stone Oak's operation of the water wells in excess of the noise level requirement. Therefore, we hold Ghidoni waived his right to assert this contention.

▆▆▆▆ With respect to Ghidoni's assertion that he was entitled to an issue regarding the

breach of the Campbell Lease based on the failure of Stone Oak and HCSA to comply with state law, we initially note that Ghidoni's pleadings do not support this assertion. Ghidoni pled that the "Ghidoni Lease" was breached by the failure to comply with state law. Ghidoni's pleading defines the "Ghidoni Lease" as the Campbell Lease, as modified by the CSA. Furthermore, even if we assume that the issue was properly pled and the trial court erred in refusing to submit the issue regarding breach of the Campbell Lease, we find such error would be harmless.

Jury charge error is only reversible if, in light of the entire record, the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App. P. 81(b)(1); *Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995); *Island Recreational Development Corp. v. Republic of Texas Savings Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). Although the trial court did not submit an issue regarding whether the Campbell Lease was breached by the failure to comply with state law, the following question was submitted which the jury answered in the affirmative:

> Do you find from a preponderance of the evidence that under the Lease, HCSA complied with all the laws, statutes, rules and regulations of the State of Texas and its agencies regarding a sanitary control easement on the Property?

By finding that HCSA complied with the laws regarding the sanitary control easement, the jury necessarily concluded that HCSA complied with the provisions of the Campbell Lease requiring such compliance. Therefore, any error in failing to submit an issue regarding HCSA's failure to comply with the original lease was rendered immaterial and harmless by the jury's response to the defensive issue. *Cf. City of Brownsville v. Alvarado,* 897 S.W.2d 750, 752 (Tex.1995).

Ghidoni's seventh point of error is overruled.

### Compliance with State Law

■ In his eighth point of error, Ghidoni contends the trial court erred in denying his motion for new trial because the evidence is factually insufficient to support the jury's finding to question number 10. Question number 10 inquired whether HCSA complied with the applicable laws relating to the sanitary control easement.

In addressing a factual sufficiency challenge, we are required to review all of the evidence; however, we may not pass on the credibility of the witnesses or the weight given their testimony, and we may not interfere with the jury's resolution of conflicts in the evidence. *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 594 (Tex.App.— San Antonio 1990, writ denied). The evidence in this case primarily consists of the letters relating to the negotiation of the sanitary control easement between Ghidoni and HCSA. At the conclusion of these negotiations, the TNRCC notified HCSA that it would allow the continued use of the wells in the absence of the sanitary control easement provided that HCSA collected certain water samples for analysis and take further measures if the test results so dictated. HCSA's expert testified that the effect of the TNRCC was to grant HCSA an exception to the sanitary control easement requirement and that the granting of such an exception was permissible under the regulations. Ghidoni did not present any evidence to contradict the expert's opinion. Based on the foregoing, we find the evidence was sufficient to support the jury's finding and overrule Ghidoni's eighth point of error.

### Injunction

Ghidoni's ninth and tenth points of error relate to the permanent injunction entered against Ghidoni. Under these points of error, Ghidoni raises various arguments relating to the contractual modification issue and HCSA's compliance with state law. In addition, Ghidoni also complains that the evidence supporting the jury's finding regarding his continued threat to the operation of the wells was factually insufficient based on his argument that the record conclusively establishes that he had the right to terminate HCSA's access to the Property for breach of the lease covenants. For the reasons previously given in addressing the modification and state law compliance issues, we reject these arguments.

Ghidoni also contends that the permanent injunction is overly broad and enjoins him from activities which are a lawful and proper exercise of his rights. Specifically, Ghidoni asserts:

> A permanent injunction has been entered in favor of HCSA, who holds possession of the land only by way of a lease. The owner of the land and lessor Ghidoni is forbidden to interfere with HCSA's possession of the property even though there are numerous covenants in the lease, which could be breached at any time and would entitle him to terminate the lease.

Ghidoni is correct that an injunction cannot be so broad as to prevent a defendant from exercising his legal rights. *See Kulkarni v. Braeburn Valley West Civic Ass'n, Inc.*, 880 S.W.2d 277, 278 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Hitt v. Mabry*, 687 S.W.2d 791, 796 (Tex.App.—San Antonio 1985, no writ). The injunction contained in the judgment provides as follows:

> IT IS FURTHER ORDERED that the oral issuance of a permanent injunction on August 22, 1994, is ratified and reaffirmed, and a permanent injunction is hereby issued such that Donald E. Ghidoni, or any person or entity acting in concert with him, including but not limited to his attorneys, agents, servants, employees, successors, heirs and assigns, be and hereby are commanded forthwith to permanently and perpetually desist and refrain and are permanently and perpetually restrained from 1) directly or indirectly restricting or preventing access to HCSA, its agents, employees, servants, successors and assigns to the property (as defined as encompassing the area of 30 feet by 30 feet around each of the three water well areas on Lots 183 and 184–B, County Block 5833E, Hill Country Estates, Unit 4, Bexar County, Texas and all easements for HCSA's ingress and egress and for all legal purposes pertaining to these well areas) or 2) in any way interfering with the use of the aforesaid property, pursuant to the Lease, by HCSA, its agents, employees, servants, successors and assigns.

Although the second prohibition limits HCSA's continued use of the property to use "pursuant to the Lease," the first prohibition is not similarly restricted. Since Ghidoni has a legal right to restrict HCSA's access to that provided under the "Lease," the first prohibition is overly broad. Accordingly, we modify the first prohibition of the injunction and limit the restraint to prohibit Ghidoni from directly or indirectly restricting or preventing access "pursuant to the Lease" to HCSA.

## DECLARATORY JUDGMENT

In his eleventh point of error, Ghidoni contends the trial court erred in granting HCSA declaratory relief because the request for relief was rendered moot by Ghidoni's counterclaim. We reject Ghidoni's contention.

Stone Oak filed an original petition seeking a declaratory judgment regarding its rights under the Campbell Lease which were subsequently assigned to HCSA. Ghidoni in essence asserts that he could and did render the request for declaratory relief "moot" by filing a counterclaim involving the same issues. While the counterclaim may shift the burden of proof and affect the manner in which a case is submitted to the jury in accordance with the authority cited by Ghidoni, we do not believe that the filing of such a counterclaim deprives the original plaintiff from pursuing the relief originally requested. *See Thomas v. Thomas*, 902 S.W.2d 621, 622 (Tex.App.—Austin 1995, writ denied) (addressing awarding of attorney's fees where declaratory judgment initially sought in original petition). Ghidoni's eleventh point of error is overruled.

## ATTORNEY'S FEES

Since the trial court has the discretion to grant or deny attorney's fees in a declaratory judgment actions, we will only reverse the trial court's award of attorney's fees if it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985); *Thomas v. Thomas*, 902 S.W.2d at 626; *Peacock v. Schroeder*, 846 S.W.2d 905, 912 (Tex. App.—San Antonio 1993, no writ). In his twelfth point of error, Ghidoni asserts that the trial court erred in awarding attorney's fees to Stone Oak and HCSA in three ways:

(1) the action for declaratory judgment was rendered moot by Ghidoni's counterclaim; (2) the CSA modified the lease as a matter of law; and (3) each party was required to bear his or its own attorney's fees.

For the reasons previously given, we reject Ghidoni's first and second contentions and only further address his argument that each party was required to bear his or its own fees. As to this third contention, Ghidoni has misconstrued the law.

■ Ghidoni cites two cases to support his assertion that where both parties have legitimate rights to pursue in a declaratory judgment action, each party should bear its own attorney's fees. While Ghidoni is correct in stating that the trial court refused to award attorney's fees under the facts in those cases, the court of appeals in each case noted that the award of attorney's fees was discretionary. *Knighton v. International Business Machines Corp.,* 856 S.W.2d 206, 210–11 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *United Interests, Inc. v. Brewington,* 729 S.W.2d 897, 906 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). The trial court *may* award attorney's fees "as are equitable and just." Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997). In reviewing such awards, we cannot substitute our judgment for that of the trial court. *Peacock v. Schroeder,* 846 S.W.2d at 912. Whether to award attorney's fees to the prevailing party in a declaratory judgment action where both parties have "legitimate rights to pursue" remains a discretionary decision of the trial court. *See Peacock v. Schroeder,* 846 S.W.2d at 911–12 (awarding prevailing party attorney's fees where both parties pursued right to declaratory relief). Based on the record before us, we do not find that the trial court's award was an abuse of discretion.

Ghidoni's twelfth point of error is overruled.

## CONVERSION AND CONSPIRACY

In points of error thirteen and fourteen, Ghidoni asserts the trial court erred in granting a directed verdict on his conversion and conspiracy causes of action because there was some evidence to support the submission of theses claims to the jury.

### Standard of Review for Directed Verdict

■ In reviewing whether a trial court erred in granting a directed verdict, we review the evidence in the light most favorable to the party against whom the directed verdict was rendered, and disregard all contrary evidence and inferences. *Qantel Business Systems, Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex.1988); *Connell v. Connell,* 889 S.W.2d 534, 538 (Tex.App.—San Antonio 1994, writ denied). If no evidence is presented to support the plaintiff's cause of action, an instructed verdict is proper. *Qantel Business Systems, Inc.,* 761 S.W.2d at 302. If there is any conflicting evidence of probative value on each element of the plaintiff's claim, the issue is for the jury. *Connell v. Connell,* 889 S.W.2d at 538; *University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 709–10 (Tex.App.—San Antonio 1989, no writ).

### Conversion

■ Conversion is the wrongful exercise of dominion and control over the property of another. *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992); *Campos v. Investment Management Properties, Inc.,* 917 S.W.2d 351, 354 (Tex.App.—San Antonio 1996, writ denied). Generally, damages for conversion are the value of the property at the time of conversion together with legal interest thereon. *Imperial Sugar Co. v. Torrans,* 604 S.W.2d 73, 74 (Tex.1980). Ghidoni contends that the directed verdict was improper because the record reflects some evidence that significant amounts of water were removed from the Property after Ghidoni terminated the Campbell Lease. Stone Oak and HCSA counter that the evidence supporting Ghidoni's conversion claim had no probative force because they were in rightful possession of the water in light of the fact that there was no breach of the Campbell Lease.

The position taken by Stone Oak and HCSA ignores our standard of review with regard to a directed verdict. Applying the applicable standard, we must view the evi-

dence in the light most favorable to Ghidoni, disregard all contrary evidence and inferences, and determine whether there was evidence of probative force to support Ghidoni's claim that Stone Oak and HCSA wrongfully exercised dominion and control over the water. Viewing the evidence in this light, we must respond in the affirmative and conclude that the trial court erred in directing the verdict.

Whether the lease was properly terminated as to Stone Oak, thereby terminating any rights Stone Oak could have assigned to HCSA, initially turned on the issue of whether the Campbell Lease was modified by the CSA. As previously discussed, this issue was properly submitted to the jury. If the jury had answered this issue in the affirmative, it would then have been required to consider whether the Campbell Lease was terminated. This issue was conditionally submitted to the jury. The submission of these issues recognizes that a question of fact was raised regarding whether Ghidoni had the right to terminate the Campbell Lease for breach of the noise level requirement and whether Ghidoni rightfully terminated the lease.

This same question of fact underlies Ghidoni's conversion claim. If the lease was properly terminated, the jury should have been required to determine whether the subsequent removal of water by HCSA and Stone Oak was the wrongful assumption of dominion and control over the water, or conversion. Therefore, the conflicting evidence regarding the continuing rights of Stone Oak and HCSA under the Campbell Lease entitled Ghidoni to at least a conditional submission of the conversion issue, and the trial court erred in rendering a directed verdict.

 Although we have determined that the trial court erred in directing the verdict, we do not believe that the error requires a reversal in view of the jury's answers to the questions that were submitted.[5] TEX.R.APP. P. 81(b)(1) provides that a new trial shall not

be ordered in an appeal based on a determination of error "unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." In the instant case, the jury failed to find that the CSA modified the terms of the Campbell Lease; therefore, the jury was not required to reach the issue regarding termination in connection with the noise level requirement. Furthermore, the jury found that HCSA complied with state laws regarding the sanitary control easement. Based on these answers, we find that the trial court's error in directing a verdict against Ghidoni on his conversion claim was harmless. *See Group Hospital Services, Inc. v. One & Two Brookriver Center,* 704 S.W.2d 886, 889 (Tex. App.—Dallas 1986, no writ); *Padgett v. Bert Ogden Motor's, Inc.,* 869 S.W.2d 532, 536–37 (Tex.App.—Corpus Christi 1993, writ denied). In the absence of an affirmative finding in Ghidoni's favor regarding termination of the lease, there could be no conversion of the water.

### *Conspiracy*

 The essential elements of civil conspiracy are: (1) two or more persons; (2) with an object to be accomplished; (3) and with a meeting of the minds on the object or course of action; (4) commit one or more unlawful or overt acts; and (5) there are damages as a proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983); *Connell v. Connell,* 889 S.W.2d at 541. Merely proving a joint intent to engage in the conduct that results in injury is not sufficient to establish a claim for civil conspiracy. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996). Instead, civil conspiracy requires a specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Id.*

---

5. In applying this harm analysis, we recognize that other decisions imply such error is automatically reversible by not conducting such an analysis. *See, e.g., Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992)(judgment reversible where party denied submission of theory raised by the pleadings and evidence and properly requested); *Autry v. Dearman,* 933 S.W.2d 182, 188 (Tex. App.—Houston [14th Dist.] 1996, writ denied). However, we believe a harm analysis is appropriate in reviewing this type of error.

Ghidoni contends that the trial court erred in granting the motion for directed verdict as to the conspiracy claim because the agreement between Stone Oak and HCSA to assign the Campbell Lease was promulgated in an attempt to continue pumping water from the leasehold after the lease was terminated. We find Ghidoni's assertion to be an unreasonable inference in view of the evidence presented and hold that the directed verdict was proper. *See Connell v. Connell,* 889 S.W.2d at 541 (fact may not be proved by unreasonable inference from other facts and circumstances). There is no evidence in the record that the sale of assets between Stone Oak and HCSA was unlawful. Therefore, there was no specific intent to agree to accomplish an unlawful act, and no evidence to support Ghidoni's conspiracy claim. *See White v. Babcock,* No. 14–94–00468–CV, 1995 WL 502942, at *3, ⸺ S.W.2d ⸺, ⸺ (Tex.App.—Houston [14th Dist.], August 24, 1995, n.w.h.)(summary judgment on conspiracy claim proper where no evidence sale of assets illegal); *Connell v. Connell,* 889 S.W.2d at 534 (no conspiracy based on conveyance of property absent showing that transfer was unlawful). Furthermore, the evidence supports the conclusion that Stone Oak only intended to convey, and HCSA only intended to acquire, those assets Stone Oak rightfully possessed, and any reference in the documentation to any asset not owned by Stone Oak, including Lot 185B, was erroneous. Therefore, we conclude the trial court did not err in granting the motion for directed verdict with respect to Ghidoni's conspiracy claim.

## INTERVENTION

Meehan (Ghidoni's ex-wife) intervened in the Stone Oak lawsuit in June of 1993, citing her one-half interest in the disputed lease awarded to her in a divorce decree and complaining of Stone Oak's failure to pay her portion of the lease payments. Ghidoni did not move to strike the plea in intervention.

In November 1993, Meehan moved to consolidate with the instant suit two previously filed lawsuits seeking to set aside a deed which Meehan executed transferring her interest in the real property and leasehold estate to Ghidoni and seeking declaratory relief. The consolidation was granted,[6] and Meehan then amended her plea in intervention to assert the claims previously made in the other causes in one single pleading.

In April 1994, ten months after Meehan first intervened and five months after consolidation, Ghidoni filed a motion for severance, separate trials and abatement as to Meehan's claims. Following a hearing, the motion was overruled on April 18, 1994. When the cause was called for trial on August 15, 1994, no further relief on the motion was sought.

### Motion to Sever

In his fifteenth point of error, Ghidoni complains of the trial court's denial of his motion to sever Meehan's claims based on the contention that Meehan's intervention was improper. In his brief, Ghidoni asserts various reasons why a justiciable interest was not shown by Meehan.

Rule 60 of the Texas Rules of Civil Procedure permits any party to intervene in an action "subject to being stricken out by the court for sufficient cause on the motion of any party." Tex.R. Civ. P. 60. An intervenor is not required to secure the trial court's permission to intervene; the party opposing intervention has the burden to challenge it by a motion to strike. *Guaranty Federal Savings Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990); *Flores v. Melo–Palacios,* 921 S.W.2d 399, 404 (Tex.App.—Corpus Christi 1996, writ denied). However, a trial court abuses its discretion in striking a plea in intervention in the absence of a motion to strike. *Guaranty Federal Savings Bank v. Horseshoe Operating Co.,* 793 S.W.2d at 657; *Flores v. Melo–Palacios,* 921 S.W.2d at 404.

Ghidoni admits that he did not file a motion to strike the intervention of Meehan, but urges that his motion for severance, separate trials and abatement essentially asked for

---

6. The order granting consolidation recites that it is "without prejudice to Donald Ghidoni [sic] right to file a motion for severance."

the same relief. We disagree. An order dismissing or striking an intervention "totally dispose[s] of the issues relating to the intervenors' interest in the suit and dismisse[s] the intervenors totally from the suit" *Barrows v. Ezer*, 624 S.W.2d 613, 618 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). A severance, on the other hand, "splits a single suit into two or more independent actions, each action resulting in an appealable final judgment." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985); *see also* Tex.R. Civ. P. 41. Therefore, the relief sought by a motion to strike intervention and a motion for severance, separate trial and abatement are clearly different and distinguishable. Ghidoni's motion clearly sought the relief available by severance.

The arguments raised by Ghidoni in briefing his fifteenth point of error relate to the propriety of Meehan's intervention not the propriety of the trial court's action in denying the severance. Because Ghidoni failed to file a motion to strike the intervention, Ghidoni has waived his right to complain that the intervention was improper on appeal under the guise of alleged error in denying his motion for severance. Ghidoni's fifteenth point of error is overruled.

### Rescission of Deed

Ghidoni's final three points of error are directed at the trial court's judgment rescinding the special warranty deed from Meehan to Ghidoni. In his sixteenth point of error, Ghidoni complains that the trial court should not have rescinded the deed because Meehan retained the benefits of the transaction giving rise to the execution of the deed. Ghidoni also complains in his eighteenth point of error that because the rescission of the deed was erroneous, the trial court erred in entering an order determining the method of lease payments. Alternatively, Ghidoni contends in his seventeenth point of error that the trial court should have conducted a post-trial evidentiary hearing to establish the amount necessary to restore Ghidoni after rescission of the deed.

A plaintiff in a suit for rescission of a deed to which he is a party generally must return, *or offer to return,* any consideration he has received. *Johnson v. Cherry*, 726 S.W.2d 4, 8 (Tex.1987); *Guerrero v. Hagco Bldg. Systems, Inc.*, 733 S.W.2d 635, 637 (Tex.App.—San Antonio 1987, no writ). When rescission is granted in such a suit, the original status of the parties must generally be restored. *See Johnson v. Cherry*, 726 S.W.2d at 8; *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470, 476 (Tex. App.—Dallas 1987, writ denied). However, rescission may be allowed without complete restoration where the particular circumstances indicate that to be the more equitable result. *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d at 474–76; *Turner v. Houston Agricultural Credit Corp.*, 601 S.W.2d 61, 65 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

Where the trial court renders a judgment rescinding a contract or deed but fails to resolve the equities relating to restoration, the proper remedy is to remand the cause to the trial court for resolution of the issue. *See Johnson v. Cherry*, 726 S.W.2d at 8 (remanding cause to trial court for determination of reimbursement amount). The record reflects that Ghidoni appeared before the trial court asking that the judgment include restoration of monies due him following the cancellation of the deed. The trial court recognized Ghidoni's entitlement and stated:

"Well, I think you are right to this extent, that he would be entitled to—since the deed was cancelled, he would be entitled to recoup the amount of money that was given. There is no question about that. But it is not part of this deal ... "

The following exchange then took place:

THE COURT: I might suggest this that in order to avoid any future litigation over this thing, that you make arrangements about the reimbursement.

(ATTORNEY FOR MEEHAN) MR. ROSS: We intend to talk to his counsel and see if we can agree what the reimbursement is and make arrangements.

THE COURT: Yeah, that would save attorneys fees.

MR. ROSS: Absolutely.

THE COURT: And, Mr. Ghidoni, and for you too.

MR. ROSS: Absolutely, and we don't deny that there is going to be some reimbursement. And we will—

(ATTORNEY FOR GHIDONI) MS. WILLIAMSON: That's what we're afraid of, Your Honor, that it will, you know, if we don't get it resolved now, it would—

THE COURT: Well, see, dear, I can't resolve it here because it has no part in here. I can urge Mr. Ross to take care of that matter. Otherwise, unless he wants to get in a lawsuit, and he doesn't need another lawsuit, so I would suggest—just a suggestion.

MR. ROSS: I understand, Judge, and we intend on doing that if we can work out what we think, you know, agree on what is due. Just briefly, for Nancy Ghidoni, intervenor, we have reviewed this final judgment. We have no objections to it. We would urge the Court to sign the judgment as—

THE COURT: You have given counsel a copy of this?

MR. CAMPAGNOLO: Yes, Your Honor, to all counsel.

THE COURT: Thank you very much.

Therefore, the record reflects that the trial court improperly refused to address the restoration issue. Contrary to Ghidoni's assertion, however, the trial court's failure to address this issue does not require the reversal of the portion of the judgment granting the rescission but only requires that the cause be remanded to the trial court for consideration of the restoration issue. Accordingly, we reverse that portion of the trial court's judgment relating to the rescission of the special warranty deed, render judgment declaring the special warranty deed null and void and setting aside the conveyance reflected therein, and remand the cause to the trial court to consider the equities relating to Ghidoni's claim for restoration. *See Johnson v. Cherry*, 726 S.W.2d at 8.

## Conclusion

The permanent injunction granted in the trial court's final judgment is modified to limit the restraint to directly or indirectly restricting or preventing access "pursuant to the Lease" to HCSA. In addition, the portion of the judgment rescinding the special warranty deed from Meehan to Ghidoni is reversed, judgment is rendered declaring the special warranty deed null and void, and the cause is remanded to the trial court for determination of the restoration issue. The remainder of the judgment is affirmed.

DUNCAN, J., dissents with opinion in which ANGELINI, J., joins.

ANTONIO G. CANTU, J., dissents with opinion.

DUNCAN, Justice, dissenting.

The majority's opinion evidences a fundamental misunderstanding and misapplication of basic Texas contractual and procedural law. When the correct law is properly applied in this case, it is clear both that the Campbell Lease merged into the Compromise Settlement Agreement as a matter of law and that the trial court abused its discretion in denying Ghidoni's motion to sever and abate Meehan's intervention. Because these errors probably resulted in an erroneous judgment, I would sustain Ghidoni's second and fifteenth points of error, reverse the trial court's judgment in its entirety, and remand the case to the trial court for further proceedings under the governing law. I therefore respectfully dissent.

### Merger of the Campbell Lease and the CSA

In his second point of error, Ghidoni argues the CSA modified the Campbell Lease as a matter of law. The majority overrules this point of error, holding that Ghidoni's argument fails because "[w]hether a contract has been modified depends on the parties' intentions and is a question of fact," and the testimonial evidence as to intent is conflicting. *Ghidoni v. Stone Oak*, 966 S.W.2d 573, 580 (Tex.App.—San Antonio, 1998, n.w.h.) (citing *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228–29 (Tex.1986)). But the majority's reliance on *Hathaway* is misplaced since it involved an oral employment-at-will contract, not a written, fully-executed, and fully-integrated contract like the CSA. Even more importantly, however, the majority's

holding not only fails to address the issue presented, it also seriously misconstrues Texas law.

### The Issue: Not **Whether** Modification But the **Extent** of Modification

Stone Oak effectively concedes the CSA modifies the Campbell Lease in certain material respects.[1] But, as Stone Oak recognizes, this concession does not resolve Ghidoni's complaint. The issue, to paraphrase Stone Oak, is whether "an alleged breach of a CSA provision [can or] cannot be enforced by the default provision of the [Campbell] Lease." In other words, the precise point upon which the parties have joined issue is not **whether** the CSA modifies the Campbell Lease but the **extent** to which it does so. Ghidoni argues the modification was complete so that the Campbell Lease and the CSA effectively became one contract and the default provisions in the Campbell Lease necessarily apply to Stone Oak's promises in the CSA. Stone Oak, on the other hand, argues that, while the CSA may modify certain terms in the Campbell Lease, the two are nonetheless independent contracts so that the default provisions in the Campbell Lease apply only to Stone Oak's promises in that lease.

### The Governing Texas Law: Merger by Express Reference

As the majority states, whether a contract has been modified centers upon the parties' intent, which is a question of fact. *Hathaway*, 711 S.W.2d at 228–29. However, this question of fact, like any other, can be proved conclusively. *Id.* at 229. And the parties' intent is conclusively proved by an unambiguous contract. As the supreme court has repeatedly stated, if a contract is unambiguous, the parties' intent presents a "question of law for the Court" to be gleaned from the contract language because, in this situation, "it is objective, not subjective, intent that controls." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968); *see also, e.g., Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.

1996) (per curiam); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731–32 (Tex.1981). An unambiguous contract thus renders extrinsic evidence of the parties'subjective understanding and intent immaterial. *E.g., Friendswood Dev. Co.*, 926 S.W.2d at 282–83; *Sun Oil Co.*, 626 S.W.2d at 732. This is the "existing precedent" by which the majority is and should "feel bound"—not a quote from *Hathaway* completely divorced from the context of decades of black letter Texas law.

Applying these well-established rules of contract construction to the CSA yields the precise rule of law that governs Ghidoni's second point of error: When one agreement expressly references another, the two agreements taken together constitute the parties' contract, and the two agreements must be construed in light of one another as a matter of law. *E.g., E.H. Perry & Co. v. Langbehn*, 113 Tex. 72, 79, 252 S.W. 472, 474 (1923).

In *Langbehn*, the question posed was whether the parties had contracted for the transportation of freight or for use of the space the freight would occupy. The parties' contract consisted of a "freight [shipping] engagement note" that expressly incorporated the bill of lading that was to be issued when the freight was delivered for shipment. In this context, the Supreme Court of Texas held that the express incorporation of the bill of lading in the freight shipping engagement meant "the two are to be considered together as constituting the contract actually executed and acted upon." *Id.* As a result, "the partial contract evidenced by the engagement note merged into, and to the extent of all inconsistencies was superseded by, the completed contract evidenced by that note and the bill of lading issued and made a part thereof; that is, the terms of the engagement note ... were modified by the issuance and acceptance of the bill of lading ..., and the later controls." *Id. 252 S.W.* at 475–76.

As more recently stated by Justice Klingeman of this court, "[w]hether a later contract

1. At page 26 of its opening brief, Stone Oak states: "There was never a dispute that the size of the leased property was reduced by the CSA, that [Ghidoni] was entitled to 2.5 million gallons

of water or that, if [Ghidoni] became the landlord, all notices would be sent to his address." In short, Stone Oak has "never argued [it is] not bound by the terms of the CSA."

is to be deemed an independent one, or incorporated with or correlated to the old agreement, is to be determined by the intention of the parties as expressed in the later agreement." *Keith A. Nelson Co. v. R.L. Jones, Inc.*, 604 S.W.2d 351, 353 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.); *see also San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 444, 61 S.W. 386, 387 (1901) (promissory notes and expressly-referenced lien instrument to be "construed together as constituting one contract").

### Standard of Review: De Novo

"A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Accordingly, we review the trial court's construction of an unambiguous contract under a *de novo* standard.

### Application of the Governing Texas Law to the Undisputed Material Facts

As Ghidoni correctly asserts, no party to this litigation has ever asserted the CSA is ambiguous, and the trial court did not so rule. To do so would be disingenuous, at best, because the parties' intent to modify the Campbell Lease by entering the CSA could not be more clear. For example, as Stone Oak concedes in its brief to this court, paragraph 3 of the CSA expressly modifies the Campbell Lease to restrict it to three wells if Ghidoni becomes lessor, and paragraph 4 of the CSA expressly requires Stone Oak to provide Ghidoni with 2.5 million gallons of water each year at no charge "[d]uring the terms of the Campbell ... Lease." Further dispelling any doubt about the parties' intent to modify the Campbell Lease, paragraph 12(c) of the CSA unambiguously states that all parties "expressly reserve, protect and save all rights that they may have in connection with [the Campbell Lease]," while paragraph 18 of the CSA unambiguously states that "[the CSA], including the instruments to which reference has been made herein, contains the entire agreement between the parties hereto, and the terms of [the CSA] are contractual and not merely recitals...."

Under these circumstances, to the extent the Campbell Lease is not inconsistent, it is merged into the CSA by virtue of paragraph 18 of the CSA as a matter of law. *See, e.g., Langbehn*, 252 S.W. at 474. Necessarily, therefore, the default provisions in the Campbell Lease apply to the promises made by Stone Oak in the CSA as a matter of law, as Ghidoni contends.

### Meehan's Intervention

In his fifteenth point of error, Ghidoni asserts the trial court erred in denying his motion to sever and abate Meehan's claims from the lease dispute. In overruling this point of error, the majority holds Ghidoni waived the point by filing a motion to sever and abate rather than a motion to strike. *Ghidoni*, at 586–87. The majority is incorrect.

### The Governing Texas Law

In Texas, a person may intervene and become a party to pending litigation simply by filing a pleading. TEX.R. CIV. P. 60. Thereafter, any party that believes the intervention is improper bears the burden of "challeng[ing] it by a motion to strike." *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). Once the propriety of the intervention is raised, the intervenor must show she has a "present justiciable interest," "legal or equitable, in the lawsuit." *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982).

If an intervenor fails to prove that she has a present justiciable interest in the proceeding, the trial court "may dismiss the intervention," *id.*, or, in appropriate circumstances, sever or separately try it. *Boswell, O'Toole, Davis & Pickering v. Stewart*, 531 S.W.2d 380, 382 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Saldana v. Saldana*, 791 S.W.2d 316, 320 (Tex.App.—Corpus Christi 1990, no writ). A severance or separate trial is appropriate when, for instance, an intervenor asserts a contingent interest that may become a present justiciable interest if a particular party prevails in the main action. *See, e.g., Schwartz v. Taheny*, 846 S.W.2d 621, 622–23 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (trial court

severed intervention that sought contingent attorney's fee because interest would become present justiciable interest only if attorney's former client prevailed in main action). If the facts are not disputed, whether a justiciable interest is shown is a question of law. *Ortiz Oil Co. v. Railroad Comm'n,* 62 S.W.2d 376, 379 (Tex.Civ.App.—Texarkana 1933, no writ).

### *Preservation of Error*

The majority holds that Ghidoni waived his right to complain of the propriety of Meehan's intervention by filing a motion to sever and abate rather than to strike. In this respect, however, the majority is incorrect and dangerously so. As demonstrated by *Schwartz,* either severance or separate trial, coupled with abatement, may well be a proper procedural path-if not the only proper path-when an intervenor asserts a contingent interest because striking the intervention might well diminish or destroy the intervenor's ability to assert his claim. Necessarily, therefore, if severance and abatement can be a proper ruling on an intervention, a motion for severance and abatement can be a proper preservation tool. *See generally* TEX.R.APP. P. 33.1(a) (general rule for preservation of error).

Here, Ghidoni's motion to sever and abate correctly states that Meehan's "potential damage claims are dependent and contingent upon the outcome of the main cause of action," and it properly requests that Meehan's claims be severed and all discovery proceedings abated "until final disposition of the main cause of action. This would prevent the necessity of either [Ghidoni] or [Meehan] from incurring unnecessary attorneys [sic] fees until the issue of whether the leases have been terminated by default has been resolved so that the potential claim of [Meehan] would no longer be set forth in contingent terms." In challenging Meehan's interest in this way, Ghidoni correctly asked the trial court to ensure that Meehan's potential rights were protected in a manner that would not prejudice Ghidoni. Ghidoni's motion, coupled with the trial court's ruling, thus preserved the error of which Ghidoni now complains. *See, e.g., Schwartz,* 846 S.W.2d at 622–23.

### *Standard of Review: Legal Question Prong of Abuse of Discretion Standard*

On appeal, the trial court's ruling on an intervention is subject to an abuse of discretion standard of review. *Mendez,* 626 S.W.2d at 499. An abuse of discretion is shown with respect to factual matters only when the record establishes that "the trial court could reasonably have reached only one decision." *Walker,* 827 S.W.2d at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. . . ." *Id.*

In this case, the material facts are undisputed; therefore, the issue presented by Ghidoni is a question of law-whether the undisputed facts demonstrate a present justiciable interest. *Ortiz Oil Co.,* 62 S.W.2d at 379. Accordingly, the trial court's ruling in this respect should be reviewed *de novo.*

### *Application of the Governing Texas Law to the Undisputed Material Facts*

At the hearing on Ghidoni's motion to sever and abate, Meehan failed to introduce any evidence establishing that she possessed a present justiciable interest at the time her intervention was filed. To the contrary, Meehan's own pleadings and arguments established that she could not then meet this requirement because she had conveyed her interest to Ghidoni shortly after their divorce. Instead, Meehan asserted a contingent interest-*if* Ghidoni recovered on his counterclaims and *if* Meehan were able to have the special warranty deed set aside, she *might* be entitled to share in his recovery.

An interest that is "wholly contingent" upon a judgment in the primary action is not a "present justiciable interest," and it is not "sufficient standing to entitle her to join in this suit. . . ." *Mendez,* 626 S.W.2d at 500; *cf., e.g., In re E.L.P.,* 636 S.W.2d 579, 581 (Tex.App.—San Antonio 1982, no writ) (because grandparents did not have standing, their joinder would have constituted error);

*see generally* 1 ROY R. McDONALD, TEXAS CIVIL PRACTICE § 5:79, at 604 (1992) Accordingly, the trial court erred in denying Ghidoni's motion to sever and abate Meehan's intervention.

## HARM AND DISPOSITION

As demonstrated by the above discussion, Ghidoni's second and fifteenth points of error establish the trial court erred in ruling on the modification and intervention issues. Therefore, these points of error must be sustained if the errors rise to the level of reversible error, *i.e.,* error that "probably caused the rendition of an improper judgment" or "probably prevented [Ghidoni] from properly presenting the case to the court of appeals" TEX. R. APP. 44.1(a)(1)-(2).

Plainly, the error as to the trial court's ruling on the modification issue was harmful-the trial court incorrectly directed a verdict against Ghidoni on the merger and termination issues, as well as his tort counterclaims; and it incorrectly precluded the jury from deciding Ghidoni's breach of contract counterclaims in its charge. Perhaps less clear, but nonetheless established by the record, is that the trial court's ruling on Meehan's intervention was harmful because it deprived Ghidoni of a trial properly confined to the evidence and issues presented by the lease dispute and instead subjected him to a trial of these issues within the context of a bitter divorce proceeding.

Because reversible error permeates the trial court's judgment with respect to both the lease dispute and Meehan's claims, it should be reversed in its entirety. On remand, the trial court should be instructed to conduct any further proceedings consistent with the governing law. The majority, however, instead affirms the judgment against Ghidoni on the lease dispute and simply remands Meehan's claims for a "restoration of benefits" determination. Because this judgment is incorrect, I respectfully dissent.

ANGELINI, J., joins.

ANTONIO G. CANTU, Justice (Assigned), dissenting.

Believing that the controversy was correctly decided on original submission, I adhere to the position expressed in the panel opinion with additional observations made in response to remarks noted in the new majority opinion of the court sitting en banc, but primarily to issues ignored *non potest adduci exceptio ejus rei cujus petitur dissolutio.*

Initially, it is appropriate to note that the panel dissent of my brother Rickhoff did not allude to anything in the record that would call for a contrary result. While he expressed a concern for fairness to litigants and lawyers in general, the focus should have remained on the litigants and lawyers before this court and the very narrow issues raised herein.[1]

Moreover, by focusing only on the appellant's Motion to Disqualify without a single reference to the testimony presented to the trial court, the dissent incorrectly assayed the issues. Nothing has been presented by Motion for Rehearing to merit a change in the direction that this court should move.

Today the new majority at the urging of the appellees, expeditiously overrules Ghidoni's disqualification challenge by characterizing the entire matter as a simple case of conflicting evidence relegated to the trial court's discretion, as the trier of fact.

The approach undertaken by the en banc majority represents a clear departure from the mandated standard of review applicable to the trial court as well as to the reviewing court. With these preliminary observations, I reurge the correctness of the court's panel majority opinion.

---

1. For purposes of an attorney disqualification motion, the likelihood of public suspicion of the legal profession outweighs any social interest of an attorney's continued representation. *See Hoggard v. Snodgrass,* 770 S.W.2d 577, 582 (Tex. App.—Dallas 1989, no writ) (" 'The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client.' ") (quoting State Bar of Texas Ethical Considerations on Code of Professional Responsibility EC 4-4 (1984)).

### The Procedural History of the Case

Donald E. Ghidoni (Ghidoni) appeals from a judgment granting declaratory, injunctive and equitable relief, including the rescission of a certain warranty deed and attorneys fees. The judgment further denied Ghidoni relief on his various counterclaims.

The proceeding arose out of a breach of lease dispute between Ghidoni, as lessor, Stone Oak, Inc. (Stone Oak) and Hill Country Waterworks (HCWW),[2] as lessees, and Hill Country S.A. Ltd. (HCSA), as successor lessee by way of assignment. Nancy J. Ghidoni–Meehan (Meehan), Ghidoni's ex-wife, intervened in the proceeding seeking rescission of a special warranty deed and declaratory judgment relief.

On February 11, 1983, Stone Oak entered into a lease with the Tomerlin Estate, Lori June Campbell and Clare Joy Campbell[3] for a portion of real property (lots 183, 184B, and 185B) (the "property") located at or near 107 Bitters Road and U.S. Highway 281, San Antonio, Bexar County, Texas. Under this lease, Stone Oak had the right to drill water wells on the property and, pursuant to said right, engaged HCWW, a wholly owned subsidiary, to operate the water wells and to supply the water needs of the thousands of residents of a large portion of North San Antonio, including, but not limited to, the communities of Stone Oak, Hill Country Village and Hollywood Park. The lease also granted Stone Oak an option to purchase the property.

Sometime thereafter, Ghidoni sued Stone Oak and the Campbells over a dispute regarding his right of first refusal to purchase the property. The suit was settled on September 17, 1984 with the execution of a compromise settlement agreement (CSA) by Ghidoni, Stone Oak and the Campbells by which Ghidoni promised to dismiss the suit and Stone Oak agreed to sublease the property to Ghidoni excluding the three water wells it then operated. Stone Oak also assigned its option to purchase the property to Ghidoni.

On December 17, 1986, Ghidoni exercised his option and became the owner of the property and lessor of the Campbell lease.

The CSA altered some of the terms in the Campbell lease by redesignating who was to receive rental payments and notices. It also reduced the area to be leased to Stone Oak in the event that Ghidoni was to exercise his option to purchase.[4]

In the CSA, Stone Oak made additional covenants not previously covered by the Campbell lease. Among these were (1) that the wells would be completed within a certain time, (2) that the noise level would not exceed 50 decibels, (3) that each well area would not exceed a space 30 feet by 30 feet, and (4) that Ghidoni would receive additional compensation of 2.5 million gallons of water each year at no charge.

On February 15, 1991, a divorce decree between Ghidoni and Meehan was entered awarding each party one-half undivided interest in the property (lots 183, 184B and 185B). Each was also awarded a one-half undivided interest in the lease covering the water well operations. On February 19, 1991, Meehan executed a deed of her one-half interest in the property to Ghidoni.

Sometime in late 1991, Ghidoni learned that the assets of Stone Oak and HCWW were advertised for sale by the RTC. On October 4, 1991, Ghidoni notified Stone Oak that it was in default of Paragraph 9c of the CSA and demanded cure of the default. Additional notices of the same default were also given by Ghidoni to Stone Oak on October 28, 1991 and February 7, 1992. Stone Oak did not cure the default within the required period but Ghidoni did not seek to terminate the lease at that time.

In February 1992, Ghidoni conducted tests at the perimeter of Well # 7 and concluded that the noise level exceeded 50 decibels. This, Ghidoni alleged, constituted a breach of paragraph 13 of the CSA. Ghidoni then notified Stone Oak on March 9, 1992 and June 9,

---

**2.** Collectively hereinafter referred to as Stone Oak plaintiffs or Stone Oak.

**3.** This lease is referred to in the record as the "Campbell lease."

**4.** The area in such event was to cover only the three water well sites and to limit their location to lots 183 and 184B.

1992 of the defaults under paragraph 13 of the CSA pursuant to the notice provisions of the Campbell lease.

On September 9, 1992, Ghidoni, by letter to Stone Oak, gave notice of termination of the lease effective September 18, 1992.

On September 28, 1992, Stone Oak entered into an Asset Purchase Agreement whereby Stone Oak and HCWW agreed to sell their assets to HCSA. One of the assets of Stone Oak to be sold was the Campbell lease.

By letter dated November 12, 1992, Ghidoni advised Stone Oak to leave the property and to remove their equipment. Nevertheless, Stone Oak did not relinquish possession but continued to operate the wells. Stone Oak, in an attempt to cure the alleged noise level default, erected an acoustical building around Well # 7 in December 1992; however, on December 12, 1992, HCWW employees arrived to find a new lock on the gate to the property which prevented their access to the water wells.

On December 22, 1992, Stone Oak filed suit against Ghidoni seeking a declaration of the parties' rights under the lease and praying for a permanent injunction. An ex parte temporary restraining order was entered enjoining Ghidoni from "taking any action to restrict or prevent access to the property or the wells."

On March 1, 1993, Ghidoni filed his counterclaim, alleging a breach of contract by Stone Oak for noise level violations and seeking damages for the water removed from the property after he declared the lease terminated.

On May 18, 1993, Stone Oak's assets were sold to HCSA d/b/a Hill Country Water Systems (HCWS) in accordance with the terms of the Asset Purchase Agreement entered into on September 28, 1992. Included in the sale was an assignment to HCSA of Stone Oak's interest as lessee under the Campbell lease. The assignment contains an acknowledgment by the parties of the Campbell lease and the CSA as well as a reference to the "Ghidoni lease."

On June 18, 1993, Meehan filed a suit to set aside the deed conveying her one-half interest in the property covered by the Campbell lease to Ghidoni and seeking declaratory judgment. Meehan also sought intervention in the suit between Stone Oak. Ghidoni did not move to strike the intervention.

On July 20, 1993, the Texas Water Commission, now Texas Natural Resource Conservation Commission (TNRCC), issued Certificate of Convenience and Necessity No. 10664(CCN) to HCSA d/b/a Hill Country Waterwork System for the facilities and service area of Hill Country Waterworks Co.

On July 30, 1993, HCSA intervened in the suit between Stone Oak and Ghidoni, and on August 3, 1993, Ghidoni was sent notice of the assignment of the lease from Stone Oak to HCSA.

On August 23, 1993, Ghidoni notified both Stone Oak and HCSA that they were in default under the lease provisions for violations of Texas Department of Health, Water Hygiene Division, Rules 290.40 and 290.41, in that neither Stone Oak nor HCSA had obtained a required sanitary control easement around each well location.

On September 9, 1993, Ghidoni, through his attorney at the time, filed a motion to disqualify the law firm of Wheatley & Sharpe which represented HCSA.

Because HCSA failed to obtain the sanitary control easement, Ghidoni, on October 4, 1993, notified Stone Oak and HCSA, by letter, that their failure to obtain the required easement constituted a violation of paragraph 12 of the Campbell lease and paragraph 13 of the CSA and that the lease was, therefore, terminated. Nevertheless, HCSA continued to operate the wells.

On November 10, 1993, the trial court consolidated Meehan's two separate suits into the instant suit.

On appeal, Ghidoni has assigned eighteen points of error.

## The Motion to Disqualify

Point of error number one complains of the trial court's refusal to disqualify the law firm of Wheatley & Sharpe from representing HCSA because:

(a) under Texas Disciplinary Rules of Professional Conduct 1.05 and 1.09, read in conjunction, Wheatley & Sharpe had an impermissible conflict of interest to which Ghidoni did not consent;

(b) under Rule 1.05, the duty to maintain client confidences extends to a prospective client like Ghidoni, who sought to employ an attorney at Wheatley & Sharpe prior to its representation of Hill Country S.A., Ltd., and that duty was breached by undertaking representation of Ghidoni's adversary in the very litigation about which confidences were imparted;

(c) the record establishes that client confidences about the present litigation were imparted during the course of Ghidoni's seeking to employ a Wheatley & Sharpe attorney and thus, as a matter of law, both the test for an "implied attorney-client relationship" and the test for a "substantial relation" between the prior client relationship and the current litigation are met; and

(d) those tests having been met, disqualification of the entire law firm of Wheatley & Sharpe from representing Hill Country S.A., Ltd. was mandated as a matter of law.

A hearing on Ghidoni's motion to disqualify was held on October 7, 1993. The record reflects that, sometime about the middle of May 1993, Ghidoni telephoned the law firm of Wheatley & Sharpe and asked to speak to Seagal Wheatley because he had read in the newspaper that Wheatley had recently won an *inverse condemnation suit.* Ghidoni had recently lost a zoning suit against Hill Country Village in the appeals court and was seeking legal advice about further recourse, such as inverse condemnation. Ghidoni's contact at Wheatley's firm was with associate Mike Duffey, who arranged to meet with him later that week.

Ghidoni testified that the discussion between him and Duffey included the interrelationship between the Hill Country Village problems and a pending lawsuit with Stone Oak over a water well lease.[5] He further claimed that during the discussions he had revealed to Duffey the status of and his strategy in the Stone Oak lawsuit, including his claims against Stone Oak for defaulting on the lease with regard to a noise level requirement. Ghidoni took numerous documents for his meeting with Duffey, some of which he left with Duffey for further review. The documents retained by Duffey were mainly concerned with the Hill Country Village suit. According to Ghidoni, Duffey wanted to review the documents he retained and to discuss Ghidoni's situation with other attorneys in the firm.[6]

On June 4, 1993, Ghidoni received a letter from the firm returning his documents and notifying him that the firm was declining to represent him. The following month, Ghidoni learned that Wheatley and Sharpe had filed an intervention suit on behalf of HCSA in the Stone Oak suit. Ghidoni felt that he had exposed all of his claims regarding the zoning and lease disputes and that such created an unfair advantage for HCSA once Wheatley and Sharpe undertook their representation and intervened in the Stone Oak suit.

At the hearing on the motion to disqualify, HCSA argued that Ghidoni was never a client, was never given legal advice and was never charged a fee, and that consequently, an attorney-client relationship was never established.

Therefore, HCSA argued, Rule 1.06 or 1.09 did not apply in the absence of such a relationship. Additionally, HCSA claimed that

---

**5.** The en banc majority opinion notes that the discussion also included Ghidoni's interest in changing attorneys in the Stone Oak suit.

**6.** Ted Campagnolo, a member of the Wheatley firm, testified that he was aware of the pending lawsuit because he had examined the court's file and had learned that Ghidoni's attorney wanted to withdraw. Campagnolo further admitted that he had discussed Ghidoni's meeting with Duffey

prior to being retained by HCSA and that he had conducted a conflicts investigation and was aware that the lawsuit involved the same property.

Wheatley admitted that he was aware of the meeting between Duffey and Ghidoni before the decision was made not to represent Ghidoni on June 3, 1993.

Rule 1.05 [7] did not apply because nothing was disclosed in furtherance of the rendition of legal services.

HCSA also argued that nothing revealed by Ghidoni was confidential and that Ghidoni did not give the court more specific information about matters revealed to his firm.

On appeal, HCSA's position remains that Ghidoni failed to establish that an attorney-client relationship existed; that in any event, all the documents tendered to the law firm were matters of public record; and, that Ghidoni failed to produce sufficient evidence to establish any ground for disqualification. HCSA's Br. at 14, 16.

In opposition to the Motion to Disqualify, the trial court inappropriately permitted Duffey to testify that his meeting with Ghidoni was limited to discussions about a zoning case and not the water well lease case (Stone Oak suit). However, Duffey admitted to having indirect knowledge about Ghidoni's case even before he met with Ghidoni through conversations with Ghidoni's prior attorney. Moreover, Duffey was not able to say whether the firm had had contacts with HCSA at the time he met with Ghidoni.

Duffey described the documents retained as being related only to the zoning case. These documents were either admitted into evidence or were adequately identified to the trial court as:

(1) Ghidoni's business card;

(2) A February 9, 1993 letter from the City of Hill Country Village to Ghidoni;

(3) A January 22, 1993 letter from the Texas Water Commission to Ghidoni;

(4) Unidentified notes from Bexar County Public Works or the City of San Antonio;

(5) The Court of Appeals opinion in the zoning case delivered on September 21, 1991;

(6) A February 19, 1993 letter from Ghidoni to the City of Hill Country Village;

(7) A March 8, 1993 letter from the City of Hill Country Village to Ghidoni;

(8) A document from Mayo Galindo, City Attorney for Hill Country Village;

(9) The trial court's charge to the jury in the zoning case;

(10) The judgment in the zoning case dated May 22, 1990; and

(11) A copy of Duffey's letter to Ghidoni dated June 3, 1993 declining representation.

Duffey denied discussing strategy regarding the water well suit with Ghidoni. The following excerpt is representative of Duffey's testimony at the hearing.

[MR. WHEATLEY] Q. Okay. Did Mr. Ghidoni, Mr. Duffey, at any time during those meetings discuss with you any strategies relevant to pending litigation over a water well situation at Stone Oak?

[MR. DUFFEY] A. No.

Q. Did he ever give you any documents that were private or confidential memorandum of any character that you saw?

A. Mr. Ghidoni brought some sort of folder of documents in. As we talked, he showed me certain documents. We put them in a stack. They were copied. Those were the documents that I sent back to Mr. Ghidoni. I didn't even retain copies of the documents that I sent back to Mr. Ghidoni. Those were the documents—the documents that we had up here today were the ones I looked at.

Q. All right. Let me show you what has been marked and admitted as Plaintiff's Exhibit 1 and just ask you to scan through that. Are those the documents that you sent back to Mr. Ghidoni that you looked at?

A. Yes, sir.

Q. Anything in there, Mr. Duffey, that was either even represented to you to be some confidential or privileged document other than the letters and pleadings?

A. No. I'm sorry. No, sir. What I understood that I was looking at are documents related to this unsuccessful zoning inverse condemnation case that

**7.** References to rules 1.05, 1.06 and 1.09 are to the Texas Disciplinary Rules of Professional Conduct.

he wanted to see if anything could be done on.

Q. Okay. Are there any documents in that stack that you see that relate to any breach of lease or water well problem at—on the property he owned?

A. I have not seen anything along that regard.

Duffey further testified that he was under the impression that Ghidoni was represented in the zoning lawsuit by attorney Nicholas Milam.[8] The record, however, reflects that Milam was Ghidoni's attorney in the pending Stone Oak suit.[9]

Milam filed a motion to withdraw as Ghidoni's attorney on June 23, 1993 and the order granting the request was entered on July 30, 1993. HCSA's Plea in Intervention was filed on the same day with service on Ghidoni and on Milam, and with the further notation that service on Milam was as "ATTORNEY OF RECORD FOR DEFENDANT DONALD GHIDONI (SUBJECT TO MOTION AND LETTER OF WITHDRAWAL)."

The trial court's order denying Ghidoni's motion to disqualify entered on October 7, 1993 recites:

\* \* \*

... the Court finds that Defendant's Motion to Disqualify is insufficient and should be DENIED.

It is THEREFORE ORDERED that Defendant Donald E. Ghidoni's Motion to Disqualify is DENIED in all respects.... [10]

Texas Disciplinary Rules of Professional Conduct [11] 1.05 and 1.09, in pertinent part provide:

### Rule 1.05 Confidentiality of Information

(a) "Confidential information" includes both "privileged information" and "unprivileged client information." "Privileged information" refers to the information of a client protected by the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the Texas Rules of Criminal Evidence or by the principles of attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United States Courts and Magistrates. "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

(b) Except as permitted by paragraphs (c) and (d), or as required by paragraphs (e) and (f), a lawyer shall not knowingly:

(1) Reveal confidential information of a client or a former client to:

(i) a person that the client has instructed is not to receive the information; or

(ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.

(2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

(4) Use privileged information of a client for the advantage of the lawyer or

---

8. As noted heretofore, Duffey admitted to having indirect knowledge about Ghidoni's case even before he met with Ghidoni through conversations with Ghidoni's prior attorney.

9. On June 22, 1993, Ghidoni filed his pro se motion to fire attorney Milam based on alleged incompetence in the handling of a collateral matter docketed as Cause No. 89CI20438 [not otherwise identified].

10. Contrary to the en banc majority's conclusion that the trial court found the evidence in support of disqualification insufficient, the court's order recites that the *motion* is insufficient, which it clearly is not.

11. TEX. DISCIPLINARY R. PROF'L CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A (Vernon Supp.1998) (TEX. STATE BAR R. art. X, § 9).

of a third person, unless the client consents after consultation.

\* \* \*

### Rule 1.09. Conflict of Interest: Former Client

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

\* \* \*

(2) if the representation in reasonable probability will involve a violation of Rule 1.05.

(3) if it is the same or a substantially related matter.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

(c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Although Ghidoni does not cite to Rule 1.06, I believe that it is pertinent to his argument as well. The rule provides:

### Rule 1.06. Conflict of Interest: General Rule

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

(2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

(1) the lawyer reasonably believes the representation of each client will not be materially affected; and

(2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute.

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06.

All parties acknowledge that no reported Texas case has addressed the factual circumstances of a disqualification based on preliminary consultation with an attorney [12] for the purpose of retaining him under the unique facts before the court.[13]

---

**12.** The en banc majority does not address this preliminary inquiry, but instead glosses over to the next inquiry under a disqualification hearing.

Perhaps the majority by implication, agrees with this dissent on the attorney-client issue.

**13.** *But see Samuels v. Montgomery*, 793 S.W.2d 337, 339–40 (Tex.App.—Houston [14th Dist.]

Nevertheless, both parties direct us to the following holdings in other jurisdictions which have squarely addressed the issue: *Kearns v. Fred Lavery Porsche Audi Co.,* 745 F.2d 600, 603 (Fed.Cir.1984); *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 & n. 12 (7th Cir.1978); *In re Dupont's Estate,* 60 Cal.App.2d 276, 288–290, 140 P.2d 866, 873 Cal. Dist. Ct.App. (1943); *Leisman v. Leisman,* 208 A.D.2d 688, 617 N.Y.S.2d 807, 807 (N.Y.App.Div.1994); *New York University v. Simon,* 130 Misc.2d 1019, 498 N.Y.S.2d 659, 661–62 (N.Y.City Civ. Ct.1985); and *Bridge Products v. Quantum Chemical Corp.,* No. 88–C–10734, 1990 WL 103200 (N.D.Ill. July 19, 1990) (unpublished).[14]

Stone Oak and HCSA recognize that the underlying facts in *New York University v. Simon, supra,* closely parallel the facts in the instant case and urge this court to uphold the trial court's refusal to disqualify for the same reasons given by the New York Court in addressing the merits of that motion.

In *Simon,* the motion to disqualify was based upon Simon having had two telephone conversations with an attorney for the purpose of deciding whether to hire him to defend against an eviction by New York University. *Simon,* 498 N.Y.S.2d at 660. Simon subsequently decided to hire another law firm. *Id.* Thereafter, the law firm of the attorney he had consulted substituted in as counsel for New York University in the eviction suit. *Id.* Simon filed a motion for disqualification, alleging that during the second conversation with the attorney, he had imparted important confidential information about his tenancy. *Id.* However, at the hearing, Simon would not divulge the information he had imparted to the attorney. *Id.* at 660, 662. The court, in overruling the disqualification motion, held that it could not grant the motion based on Simon's mere conclusion that the matters discussed were significant and further held that Simon should at least have stated the nature of the information revealed. *Id.* at 662.[15]

Aside from the foregoing basis for the court's ultimate holding, I think the following language in the opinion merits attention:

> The general principle disqualifying one's former attorney from representing an adversary is not limited to situations where the prior representation was in a traditional attorney-client relationship. Although Canon 4 of the Code of Professional Responsibility declares that "a lawyer should preserve the confidences and secrets of a client," Ethical Consideration 4–1 states that "both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or *sought to employ him.*"[16]

---

1990, orig. proceeding [leave denied] )(lawyer representing husband while working for one law firm accepted offer of employment with law firm representing wife not disqualified because not yet working with new law firm); *Davis v. Stansbury,* 824 S.W.2d 278, 282–284 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding) (attorneys in same law firm representing husband and wife in divorce proceeding not required to be disqualified absent proof necessary for determination on conflict of interest). Subsequent to the drafting of the court's panel majority opinion, the Supreme Court of Texas delivered its opinion in *National Medical Enterprises, Inc. v. Godbey,* 924 S.W.2d 123 (Tex.1996) wherein the court directly touched on the issue.

**14.** An unpublished opinion is not to be cited or relied upon as precedential authority. *See* Tex. R.App. P. 90.

**15.** The court observed that movant's counsel continuously objected to questions asked of movant on cross-examination and that the objections were sustained with the result that all that was learned about the discussions claimed to be confidential was that they were about the case and considered important and confidential by movant. *Simon,* 498 N.Y.S.2d at 662.

**16.** The language of Ethical Consideration 4–1 is remarkably similar to the language found in Comment 1 to Rule 1.05 of Texas's State Bar Rules, to wit:

**Confidentiality Generally**
1. Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed or sought to employ the lawyer. Free discussion should prevail between lawyer and client in order for the lawyer to be fully informed and for the client to obtain the full benefit of the legal system. The ethical obligation of the lawyer to protect the confidential information of the client not only facilitates the proper represen-

*Simon,* 498 N.Y.S.2d at 661 (*emphasis in the original* ).

The opinion continues:

> It has been held that where one consulted an attorney with a view to employing him, communications in the course of such preliminary discussions are subject to the attorney-client privilege (*Benge v. Superior Court,* 131 Cal.App.3d 336, 182 Cal. Rptr. 275, 280 (1982); *Taylor v. Sheldon,* 172 Ohio St. 118, 173 N.E.2d 892, 895 (1961); McCormick, Evidence (3d ed. 1984) Sec. 88, p. 208), for if the privilege depended on the chance of whether the attorney after hearing the statement of the facts decided to accept the employment or decline it, "no person could even safely consult an attorney for the first time." *In re Dupont's Estate,* 60 Cal.App.2d 276, 287, 140 P.2d 866, 873 (1943).

*Simon,* 498 N.Y.S.2d at 661.

In the case of *In re Dupont's Estate,* the movant consulted with an attorney with a view to employing him as her attorney to contest a will. *In re Dupont's,* 140 P.2d at 872. At the close of the interview, the attorney declined the employment. *Id.* The opponent sought to avoid disqualification by arguing that the pertinent language of the California Code of Civil Procedure, which extended the privilege to communications between attorney and client "in the course of professional employment," did not apply where employment was refused because the situation fell outside the language of the section. *Id.*

In rejecting this argument, the court stated:

> It is the almost universal rule in common-law jurisdictions that "Where a person consults an attorney with a view to employing him professionally, any information acquired by the attorney in the course of interviews or looking toward such employment is privileged and cannot be disclosed, even though no actual employment of the attorney, as such follows, and not withstanding the attorney may be after-

tation of the client but also encourages potential clients to seek early legal assistance.

ward employed by the adversary of the person who made such communication." *Id.* (citations omitted).

Much reliance was placed by the court in the *In re Dupont's Estate* case on an earlier Colorado opinion interpreting a similar statute. *Id.* at 872–73. The reasoning therein merits repeating.

> "If a person in respect to his business affairs, or troubles of any kind, consults with an attorney in his professional capacity, with the view to obtaining professional advice or assistance, and the attorney voluntarily permits or acquiesces in such consultation, then the professional employment must be regarded as established, and the communication made by the client, or advice given by the attorney, under such circumstances is privileged. An attorney is employed—that is, he is engaged in his professional capacity as a lawyer or counselor—when he is listening to his client's preliminary statement of his case, or when he is giving advice thereon, just as truly as when he is drawing his client's pleadings, or advocating his client's cause in open court. It is the consultation between attorney and client which is privileged, and which must ever remain so, even though the attorney, after hearing the preliminary statement, should decline to be retained further in the cause, or the client, after hearing the attorney's advice, should decline to further employ him."
>
> As has been pointed out in other cases, no person could ever safely consult an attorney for the first time with a view to his employment if the privilege depended on the chance of whether the attorney after hearing his statement of the facts decided to accept the employment or decline it.

*Id.* (citing *Denver Tramway Co. v. Owens,* 20 Colo. 107, 36 P. 848, 855 (1894)).

The same view is reflected by the following opinions: *Kearns,* 745 F.2d at 603; *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d at 1319 & n. 12 (fiduciary relationship between lawyer and client extends to prelimi-

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 1.

nary consultation by a prospective client with a view to retention of the lawyer although actual employment does not result); *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir.1977) (attorney-client relationship existed between attorney and each codefendant in a conspiracy case due to necessity of consulting with each other); *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir.1976)(attorney-client relationship arose by imputation); *Williamsburg Wax Museum Inc., v. Historic Figures, Inc.*, 501 F.Supp. 326, 331 (D.D.C. 1980) (citing from Ethical Consideration 4–1 in language almost identical to comment 1 to Rule 1.05 of Texas's State Bar Rules; *E.F. Hutton & Co. v. Brown*, 305 F.Supp. 371, 388 (S.D.Tex.1969)) (relation of attorney and client not dependent on the payment of a fee nor upon the execution of a formal contract); *Leisman*, 617 N.Y.S.2d at 807 (preliminary consultation by husband with wife's attorney regarding a prior action between husband and former wife in a divorce case required disqualification); *Taylor v. Sheldon*, 172 Ohio St. 118, 173 N.E.2d 892, 895 (1961) (disclosures made with a view to enlist attorney's services are privileged).

A party seeking disqualification has the burden of establishing at the outset that an attorney-client relationship, or some other relationship giving rise to an implied fiduciary obligation arose. *Rio Hondo Implement Co. v. Euresti*, 903 S.W.2d 128, 131–32 (Tex. App.—Corpus Christi 1995, orig. proceeding); *Occidental Chemical Corp. v. Brown*, 877 S.W.2d 27, 30–32 (Tex.App.—Corpus Christi 1994, orig. proceeding), *vacated sub nom. Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466 (Tex.1994); *see also Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978) (involvement such that discovery of confidential information was likely); *In re Yarn Processing Patent Validity Litig.*, 530 F.2d at 90 (duties of loyalty and confidentiality only arise from attorney-client

relationship); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir.1971).

I do not agree with Stone Oak and HCSA that disqualification may not be based upon a single preliminary consultation with an attorney for the purpose of retaining him and that a formal attorney-client relationship is necessary to be a former client under Rules 1.05 and 1.09. As recognized by our Supreme Court in *National Medical Enter.v. Godbey*, 924 S.W.2d 123, 132 (Tex.1996), "The difficulty in proving a misuse of confidences, and the anxiety that a misuse may occur, is no less for the non-client. The doubt cast upon the integrity of the legal profession is the same in either situation." I would hold that the language of Rule 1.05 is broad enough to extend the privilege to preliminary statements made in good faith to an attorney while in the course of seeking his employment as an advocate. Moreover, the interpretation placed by Stone Oak and HCSA runs contrary to the obvious purpose and policy of the rule and nullifies the salutary effect intended: the protection to persons consulting attorneys. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 13; *see also National Medical Enter. v. Godbey*, 924 S.W.2d at 131–132.

Having established that a fiduciary relationship existed sufficient to satisfy the attorney-client requirement by virtue of preliminary consultation by a prospective client with a view to retention of the attorney, it is appropriate to next turn to the universally accepted rule on disqualification. The moving party must next show that during the existence of the attorney-client relationship, [in this case without regard to its duration], factual matters were involved that are so related to the facts in the pending litigation [17] that a genuine threat now exists that confidences revealed to his former attorney will be divulged to his present adversary. *See NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399–400 (Tex.1989).[18] Sustaining

---

17. The test speaks of substantial relationship, not substantial identity, of legal and factual elements between the prior representation and the pending litigation. *See Home Ins. Co. v. Marsh*, 790 S.W.2d 749, 753 (Tex.App.—El Paso 1990, orig. proceeding).

18. Although *Coker* involved the application of DR 4–101(B) of the Texas Code of Professional Responsibility (repealed eff. Jan. 1, 1990), the holding in *Coker* is essentially engrafted into the language in Rules 1.06 and 1.09 requiring application of a "substantially related" test. *See* TEX.

this burden requires evidence of specific similarities capable of being recited in the disqualification order. *Id.* at 400. If this burden can be met, the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *Id.*

The factual matters need not be "relevant" in the evidentiary sense to be "substantially related." They need "only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1341, 1346 (5th Cir. Unit A 1981), *overruled on other grounds, Gibbs v. Paluk,* 742 F.2d 181 (5th Cir.1984). So that if parts of the present action and the past representation concern the very same subject matter, reasonable minds must agree that they are substantially related. *Id.* Therefore, if the movant proves a substantial relationship between the two representations, he establishes, as a matter of law, that an appearance of impropriety exists. *See Coker,* 765 S.W.2d at 400; *see also J.K. and Susie L. Wadley Research Inst. and Blood Bank v. Morris,* 776 S.W.2d 271, 276 (Tex. App.—Dallas 1989, orig. proceeding). The trial court should then disqualify counsel from further representation in the pending litigation. *See HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 628 (Tex.App.—Austin 1992, writ denied); *Howard v. Texas Dep't of Human Serv.,* 791 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1990, no writ).

The following excerpts are representative of Ghidoni's offer of proof:

Q. (By Movant's attorney) Mr. Ghidoni, what did you discuss with Mr. Duffey?

A. I discussed the inverse condemnation that I was interested in with Hill Country Village. I was—also discussed with him the interrelationship between the Stone Oak suit and Hill Country Village and how they related. I showed him documents, including the agreement that has been mentioned so many times this morning, and I discussed the overall strategy of both cases with him.

Q. How much time did you spend with Mr. Duffey?

A. I would say about an hour and a half to two hours.

Q. Did you leave the documents with him?

A. He selected the documents that he was interested in. He didn't take all of them. He just took a very small portion of them and said that he wanted to discuss those with the other attorneys in the office.

Q. Did you discuss with Mr. Duffey whether or not your conversation with him would be privileged information?

A. I don't think I said specifically that.

Q. Did you discuss whether it would be kept confidential?

A. He told me that it would be kept confidential.

* * *

MR. WHEATLEY: Your Honor, I would object unless he asks what the information was. We still haven't found out what the information was.

THE COURT: Sustain the objection.

Q. (By Mr. Wallis) Mr. Ghidoni, what information did you reveal to Mr. Duffey that you felt was confidential or essential to your case?

A. I gave him—some of the documents that he kept, I think, was the—I had some letters from the Texas Water Commission to me, some notes on—from the City of San Antonio and also Bexar County in relation to the City of Hill Country Village.

I showed him the agreement that was talked about so much this morning. That was in October of 1983. We talked about where I was with the—with the Stone Oak case at that particular point in time. And let's see. The whole folder was probably about two and a half inches thick of information, but he only kept about a quarter of an inch of it, maybe a half an inch.

Q. Did you discuss any of your specific claims that you had against Stone Oak?

A. Yes. I laid out virtually everything that was happening with the Stone Oak case at that time.

Q. Did you discuss the controversy about the noise levels?

A. Yes, and also about paragraph 9C of the default agreement in the compromise settlement agreement.

Q. Did you discuss then your beliefs as to why you felt that Stone Oak was in default?

A. Yes. And I also discussed how both cases were interrelated, how the agreement was—that stated that Stone Oak was going to hold Hill Country Village harmless from any actions by me. And I was interested in finding out what other agreements were made at that time. And it— and it appeared that all the information from all the meetings between Stone Oak and Hill Country Village had disappeared prior to May of 1985.

Q. Did you discuss Stone Oak's claim against you?

A. Yes.

Q. Specifically, what did you discuss?

A. I discussed the point that I had canceled and everything that led up to the cancellation of the lease agreement and the compromise settlement agreement with Stone Oak, and, you know, all the testing that had been done from the different audio companies, and the testing that was supposed to have been done by Stone Oak.

And that within the agreement between Hill Country Village and Stone Oak, there was a meeting where Stone Oak was required by Hill Country Village to do three noise levels tests, and that was, I believe, in 1985. And also in the agreement, they had agreed to—that the noise levels would not create a nuisance for the neighborhood.

In other words, both cases are totally interrelated. It would have been very nice to be able to have one attorney, and I was strongly suspect of the quality of Nicholas Milam as an attorney. I did not present them taking over that particular case at the time. I was interested to see if they would be interested in taking over the inverse condemnation suit. . . .

\* \* \*

Q. Did you discuss with Mr. Duffey any of your theories about how you felt the case should be handled?

MR. WHEATLEY: What case?

A. Well, we just—

MR. WHEATLEY: I'm sorry, Your Honor.

MR. WALLIS: The case with Stone Oak.

Q. Yes. And I was also interested in— because of the interrelationship between Hill Country Village and Stone Oak, I advised them of my strategy on both cases.

Stone Oak and HCSA contend that the testimony by Ghidoni merely shows that he sought representation from the firm in a zoning case and not in the Stone Oak case.[19] Ghidoni agrees but states that in the course of seeking representation in the zoning case he divulged confidential matters applicable to the Stone Oak case. In fact, Wheatley's associate, Campagnolo, was aware of the nature of Ghidoni's pending lawsuit from conducting a conflicts investigation and in consulting the court's file of Ghidoni's lawsuit. The new majority also recognizes that the matter of changing attorneys was also discussed.

Stone Oak and HCSA also argue that the foregoing representative testimony of Ghidoni constitutes nothing more than conclusory statements regarding the substance of the

---

**19.** Duffey's testimony in rebuttal generally denied any mention of the Stone Oak case but did not otherwise deny the consultation or discussion about the zoning case. Even so, Stone Oak and HCSA's position with regard to the matters relevant to the zoning case seems to be that all the documents provided by Ghidoni were public records. But the fact that some of the documents may be public records does not necessarily make

them "generally known." Tex. Disciplinary R. Prof'l Conduct 1.05(b)(3) & cmt. 8; *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 572–73 (2d Cir.1973); *General Elec. Co. v. Valeron Corp.,* 428 F.Supp. 68, 74 (E.D.Mich.1977); *Fleischer v. A.A.P. Inc.,* 163 F.Supp. 548, 551 (S.D.N.Y.1958), *appeal dism'd sub nom., Fleischer v. Phillips,* 264 F.2d 515 (2d Cir.1959).

discussions between Duffey and Ghidoni. *See Simon,* 498 N.Y.S.2d at 662 (analyzed at pp. 14–16 of opinion). I do not agree.

The testimony proffered by Ghidoni was sufficiently specific, not only to identify factual similarities between the consultation and the litigation at hand capable of being recited in a disqualification order, but to establish by a preponderance of the evidence that the subject matter of the consultation included the very matters involved in the litigation in which the disqualification was sought. Once Ghidoni proffered his evidence establishing a substantial relationship, Stone Oak and HCSA were prohibited from inviting the trial court to engage in a credibility assessment putting their general denial against Ghidoni's tender of proof. *Cf. Home Ins. Co. v. Marsh,* 790 S.W.2d 749, 754 (Tex.App.—El Paso 1990, original proceeding) [leave denied]. This point is where the en banc majority goes astray when it disregards the conclusive, irrebuttable presumption and engages in a credibility assessment from the viewpoint of the trial court. In a similar case, the law firm argued that the presumption that confidences had been given the client had been rebutted because every lawyer in the firm had submitted an affidavit swearing that he or she did not give the client advice on the matter in question. *See In re Corrugated Container Antitrust Litig.,* 659 F.2d at 1345–46.

The court stated that for purposes of the rule proscribing the subsequent representation of a client adverse to the attorney's former client, if there is a substantial relationship between the matters involved in the two representations, a presumption that confidences were given to the attorney by his former client is not susceptible of rebuttal by proof. *See id.* at 1347.

If the presumption were rebuttable, that is, if the attorney could attempt to prove that he did not recall any disclosure of confidential information, or that no confidential information was in fact disclosed, this could also defeat the purpose of keeping the clients secrets confidential. The

confidences would be disclosed during the course of rebutting the presumption by the attorney, or if the presumption was considered rebutted, the client might again be put into the anomalous position of having to show what confidences he entrusted to his attorney in order to prevent those confidences from being revealed.

*Id.; see E.F. Hutton,* 305 F.Supp. at 395 (attorney cannot defeat motion to disqualify by showing that he received no confidential information from the former client. To do so would engender a feeling in the client that the attorney has escaped on a technicality); *see also* Harva Ruth Dockery, Note, *Motions to Disquality Counsel Representing an Interest Adverse to a Former Client,* 57 TEX. L. REV. 726 (1979).

Ghidoni was not required to reveal the very confidences he sought to protect. *See Home Ins. Co. v. Marsh,* 790 S.W.2d at 754. By demonstrating identical evidence as opposed to evidence of specific similarities,[20] Ghidoni was entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney. *See Coker,* 765 S.W.2d at 400; *Godbey,* 924 S.W.2d at 131. In fact, the record reveals that Wheatley obstructed numerous efforts by Ghidoni to provide even more specifics about what was discussed with Duffey.

The following testimony is representative:

(WALLIS) Q. Did you also discuss the specific of your case with Stone Oak?

\* \* \*

MR. WHEATLEY: "Discuss specifics" is too vague for me to cross-examine this witness on.

\* \* \*

Q. Did you discuss the strategy of the case?

MR. WHEATLEY: Again, I cannot cross-examine it.

I do not believe the circumstances in the instant case are much different from those in

---

**20.** Campagnolo was aware that the pending lawsuit involved the same property of which Ghidoni

had spoken about Duffey.

*HECI Exploration Co. v. Clajon Gas Co.* wherein the offensive conduct which occurred is the representation of both parties in the same proceeding. *See HECI Exploration,* 843 S.W.2d at 628; *see also Petroleum Wholesale, Inc. v. Marshall,* 751 S.W.2d 295, 300 (Tex.App.—Dallas 1988, orig. proceeding) (offensive conduct occurred where attorney with firm representing one party in pending case transferred to firm representing other party). I do not concern myself with vicarious disqualification and the imputation of the attorney's knowledge of his former clients' confidences to his associates because in the instant case it is undisputed that Duffey consulted with disclosed and undisclosed firm associates regarding Ghidoni seeking representation. It is also clear that the fiduciary relationship between Ghidoni and the law firm arose out of circumstances which culminated in representation by the firm of opposing parties to the same litigation without Ghidoni's consent. This proof shows clear violations of Rules 1.06(a), 1.06(b)(1) and (2), 1.09(a)(2), 1.09(2)(3), 1.05(b)(1)(ii), and 1.05(b)(3). Under the provisions of Rule 1.06(d), (e) and (f), none of the members of the firm are permitted to continue representation of the opposing party.

The standard of review of a ruling on a motion to disqualify is limited to the question of whether the trial court abused its discretion. *See Coker,* 765 S.W.2d at 400; *see also Metropolitan Life Ins. Co. v. Syntek Fin. Corp.,* 881 S.W.2d 319, 321 (Tex.1994). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Syntek Fin. Corp.,* 881 S.W.2d at 321.

A clear abuse of discretion is shown where the court refuses to disqualify an attorney although it is self-evident that the subject matters of the two representations are substantially related. *See Gleason v. Coman,* 693 S.W.2d 564, 566–67 (Tex.App.—Houston [14th Dist.] 1985, ref'd n.r.e.) (citing to *In re Corrugated Container Antitrust Litig.,* 659 F.2d 1341, 1346 (5th Cir.1981)). This is par-

ticularly true where the trial court has deviated from the mandated hearing requirements.

I would hold that on the record before us, based upon the language in Rules 1.05, 1.06 and 1.09, and upon the *Coker* standard, it was an abuse of discretion for the trial court to (1) engage in a credibility assessment of opposing testimonies and (2) conclude that Ghidoni was required to prove the existence of a traditional prior attorney-client relationship, and (3) that the factual matters involved were not so related to the facts in the pending litigation that it created a genuine threat that confidences revealed to the Wheatley & Sharpe law firm would be divulged to Stone Oak and HCSA. I would sustain Ghidoni's point of error number one.

In view of my approach to Ghidoni's first point of error I would not address points of error numbers two through fourteen complaining of trial court error. Instead, I would pass on to points of error numbers fifteen through eighteen relating to the appellee Meehan.

### The Intervenor Meehan

Point of error fifteen complains of the trial court's denial of Ghidoni's Motion to Sever Meehan's claims from the lease dispute with Stone Oak and HCSA because Meehan's intervention was, allegedly, improper.[21]

Point of error sixteen alleges that the trial court erred in entering a judgment rescinding the special warranty deed sought to be set aside by Meehan because Meehan is said to have retained the benefits under the underlying contract.

Point of error seventeen claims error, in the alternative, because the trial court entered a judgment that Ghidoni take nothing and denied him a post-trial evidentiary hearing to establish what sum would restore him to the status quo after rescission of the special warranty deed.

Point of error eighteen claims that the trial court erred in entering an order determining a method of lease payments because the re-

---

**21.** I believe the matter was correctly addressed on original submission and reurge the same disposition.

scission of the special warranty deed was, allegedly, erroneous.

In the original suit filed in December 1992, Stone Oak sued Ghidoni for injunctive relief and a declaration of rights of the parties under the Campbell lease and the CSA. In March 1993, Ghidoni counterclaimed against Stone Oak for breach of the lease and CSA. In May 1993, Stone Oak's assets were sold to HCSA, and in July HCSA intervened in the suit mirroring Stone Oak's request for relief.

In June 1993, Meehan intervened in the lawsuit, citing her one-half interest in the disputed lease awarded to her in a divorce decree and complaining of Stone Oak's failure to pay her portion of the lease payments. Meehan further denied terminating or agreeing to terminate the lease with Stone Oak, but alternatively sought to recover one half of any damages recovered by Ghidoni should the lease be found to have been terminated. Ghidoni did not move to strike the plea in intervention.

In November 1993, Meehan moved to consolidate with the instant suit two previously filed lawsuits seeking to set aside a deed which she executed transferring her interest in the real property and leasehold estate and seeking declaratory relief. The consolidation was granted,[22] and Meehan then amended her plea in intervention to assert the claims previously made in the other causes in one single pleading. The amended pleading included (1) an action to set aside a deed, (2) an offer to restore any benefits she received subject to an offset for lease and rental proceeds to which she would have been entitled,

(3) an affirmation that she did not authorize, consent to or ratify Ghidoni's alleged termination of the lease, and (4) in the alternative, the adoption, as her own, of Ghidoni's causes of action and pleadings against Stone Oak and HCSA. Ghidoni did not move to strike the amended plea in intervention.

In April 1994, ten months after Meehan first intervened and five months after consolidation, Ghidoni filed his motion for severance, separate trials and abatement as to intervenor. Following a hearing, the motion was overruled on April 18, 1994. When the cause was called for trial on August 15, 1994, no further relief on the motion was sought.

On appeal, Ghidoni challenges Meehan's right to intervene because she allegedly did not have a justiciable interest. In his brief, Ghidoni asserts various reasons why a justiciable interest was not shown by Meehan and directs us to portions of the testimony at trial and some of the exhibits admitted therein. Some of the challenges now urged on appeal are reflected in the motion to sever filed by Ghidoni and were, in fact, presented to the trial court at the hearing on April 18, 1994. Some are raised for the first time on appeal.

Subsequent to the overruling of Ghidoni's motion to sever, on June 2, 1994, Ghidoni filed his Fourth Amended Original Answer and Counterclaim[23] which, for the first time, sought declaratory judgment relief regarding his rights under the lease, and for the first time also sought affirmative relief against Meehan and her attorney by way of a counterclaim requesting sanctions under Rule 13, Texas Rules of Civil Procedure.[24] In his

---

**22.** The order granting consolidation recites that it is "without prejudice to Donald Ghidoni [sic] right to file a motion for severance."

**23.** The same claims were carried forward in Ghidoni's Fifth Amended Original Answer and Counterclaim filed on July 27, 1994.

**24.** Rule 13 provides: **Rule 13. Effect of Signing of Pleadings, Motions and Other Papers; Sanctions**

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the pur-

pose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which

counterclaim, Ghidoni sought damages of $100,000.00 and reasonable attorneys fees incurred in the defense of Meehan's claims.[25]

Rule 60, Texas Rules of Civil Procedure, permits any party to intervene in an action without obtaining the trial court's approval subject to being stricken out for sufficient cause on the motion of the opposite party. *See* Tex.R. Civ. P. 60; *see also Helton v. Kimbell,* 621 S.W.2d 675, 678 (Tex.App.—Fort Worth 1981, no writ). Thus, any party having an interest in the subject matter of a litigation pending between other parties is permitted to intervene without obtaining the trial court's approval for the purpose of asserting and protecting that interest, subject to being stricken out for sufficient cause on the motion of the opposite party. *Helton,* 621 S.W.2d at 678; *Pfeiffer v. Bissett,* 402 S.W.2d 938, 939 (Tex.Civ.App.—San Antonio 1966, no writ); *Inter–Continental Corp. v. Moody,* 411 S.W.2d 578, 589 (Tex.Civ.App.—Houston 1966). The intervenor must have a justiciable interest in the lawsuit, be it a legal one or an equitable one. *See Mendez v. Brewer,* 626 S.W.2d 498, 499 (Tex.1982). It is not essential to the intervention that the applicant be a necessary party to the pending suit; it is sufficient if he is merely a proper party, since by his participation a multiplicity of suits will be prevented. *See Jones v. English,* 235 S.W.2d 238, 240 (Tex.Civ.App.—San Antonio 1950, writ dism'd).

Where the cause of action pleaded by the intervenor, although good on its face, does not authorize intervention in the particular suit, a motion to strike is proper, and if the motion is sustained, the intervention will be dismissed without prejudice. *Cf. DeCato v. Krebs Constr., Inc.,* 410 S.W.2d 806, 808 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e.). But if the opposing party fails to move to strike an intervention, that party waives any right to complain. *See Delley v. Unknown Stockholders of Brotherly & Sisterly Club of* *Christ, Inc.,* 509 S.W.2d 709, 717 (Tex.Civ. App.—Tyler 1974, writ ref'd n.r.e.).

The trial court has a wide discretion in judging the sufficiency of an opposing party's motion to the intervention. *See Galveston Bay Conservation & Preservation Ass'n v. Texas Air Control Bd.,* 586 S.W.2d 634, 641 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). However, that discretion is subject to review for abuse. *See Moody,* 411 S.W.2d at 589.

Ghidoni admits that he did not file a motion to strike the intervention of Meehan, but urges that his motion for severance, separate trials and abatement essentially asked for the same relief. At the outset, we note that the grant of a motion to strike intervention results in a dismissal, although the order itself may not be a final judgment. *See Metromedia Long Distance, Inc. v. Hughes,* 810 S.W.2d 494, 498–99 (Tex.App.—San Antonio 1991, writ denied). Conversely, severance does not operate as a dismissal of the suit, *Harris v. Moore,* 740 S.W.2d 14, 15 (Tex.App.—El Paso 1987, orig. proceeding), rather it divides a lawsuit into two or more separate independent causes, each of which can lead to a separate judgment which is final, enforceable and appealable, *Hall v. City of Austin,* 450 S.W.2d 836, 837–38 (Tex. 1970).

The relief sought by a motion to strike intervention and a motion for severance, separate trials and abatements are clearly different and distinguishable. In the absence of a motion to strike urged by one of the parties, the trial court was not authorized to strike the intervention. *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 657 (Tex.1990); *Schwartz v. Taheny,* 846 S.W.2d 621, 622 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

Ghidoni may not complain of improper intervention under the guise of alleged error in denying his motion for severance. Therefore, in order to be entitled to reversal, the

---

must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule.

Tex.R. Civ. P. 13.

25. The record before us does not disclose that the relief sought was ever urged before the trial court and, presumably, was abandoned or waived.

claimed error must be based on an abuse of discretion by the trial court in overruling Ghidoni's motion for severance because Ghidoni has waived the right to urge a motion to strike.

"The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prosecuted or defended in the court below." *Boatner v. Providence–Washington Ins. Co.*, 241 S.W. 136, 140 (Tex. Comm'n App.1922).

For severance to be proper, "there must be more than one cause of action involved in the controversy, the severed cause must be one that would be the proper subject of a lawsuit if independently asserted, and the cause of action severed must not be so interwoven as to involve the same identical facts and issues nor, in certain instances, relate to the same subject matter as the cause from which it is severed." *Hayes v. Norman*, 383 S.W.2d 477, 478–79 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.).[26] Whether a severance should be granted is within the sound discretion of the trial court, and its order will be disturbed only on a showing of abuse. *See Hamilton v. Hamilton*, 154 Tex. 511, 280 S.W.2d 588, 591 (1955).

In examining the body of Ghidoni's brief in support of his point of error, I believe that he has made his right to severance depend upon his right to strike intervention. I would not rule on an issue not presented to the trial court.

Nevertheless, under the state of the record before this court, Ghidoni voluntarily waived any right to complain of the trial court's refusal to dismiss Meehan's intervention and to urge severance by filing a counterclaim against Meehan and by seeking declaratory relief of his rights under the lease and CSA, the identical relief sought by Meehan and the other appellees.

I find no abuse of discretion on the part of the trial court in overruling Ghidoni's motion to sever, and, therefore, would overrule point of error fifteen.

Ghidoni's sixteenth point of error complains that Meehan was, as a matter of law, not entitled to the equitable remedy of rescission because she retained the benefits of the transaction giving rise to the execution of the warranty deed she sought to set aside. Point of error seventeen complains of the trial court's refusal to grant a post-trial evidentiary hearing to establish the amount necessary to restore Ghidoni after rescission of the warranty deed. Point of error eighteen complains of the trial court's entering an order determining the method of lease payments.

Ghidoni argues that the trial court's judgment allows Meehan to rescind the special warranty deed conveying her interest in lots 183, 184B and 185B, that it restores her co-tenancy in the property and allows her to take with her all the benefits that she obtained in consideration of the conveyance, including monies paid to Meehan by Ghidoni and obligations or debts of Meehan assumed by Ghidoni, in addition to the benefit of improvements made to the property and monies expended by Ghidoni as the managing co-tenant to preserve the value of the property. Ghidoni further argues that Meehan is legally responsible for the expenditures made by him during the two and one half years since the execution of the deed and that he is, as a matter of law, entitled to reimbursement of these expenses. Moreover, Ghidoni states that the mere offer to tender the consideration paid, as made by Meehan's counsel at the hearing on motion to enter judgment, does not comply with the doctrine of restitution required for the equitable remedy of rescission. Finally, Ghidoni complains of the trial court's order requiring him to pay lease proceeds over to Meehan and her attorney.

The record reflects that Ghidoni appeared before the trial court asking that the judgment include restoration of monies due him following the cancellation of the deed. The

---

**26.** *See Lasater v. Franklin Life Ins. Co.*, 471 S.W.2d 95, 98 (Tex.Civ.App.—El Paso 1971, no writ) (error to sever the crossclaim and counterclaims of intervenors where claims related to same subject matter as the cause from which it was severed).

trial court recognized Ghidoni's entitlement and stated:

> "Well, I think you are right to this extent, that he would be entitled to—since the deed was cancelled, he would be entitled to recoup the amount of money that was given. There is no question about that. But it is not part of this deal ... "

The following exchange then took place:

THE COURT: I might suggest this that in order to avoid any future litigation over this thing, that you make arrangements about the reimbursement.

(ATTORNEY FOR MEEHAN) MR. ROSS: We intend to talk to his counsel and see if we can agree what the reimbursement is and make arrangements.

THE COURT: Yeah, that would save attorneys fees.

MR. ROSS: Absolutely.

THE COURT: And, Mr. Ghidoni, and for you too.

MR. ROSS: Absolutely, and we don't deny that there is going to be some reimbursement. And we will—

(ATTORNEY FOR GHIDONI) MS. WILLIAMSON: That's what we're afraid of, Your Honor, that it will, you know, if we don't get it resolved now, it would—

THE COURT: Well, see, dear, I can't resolve it here because it has no part in here. I can urge Mr. Ross to take care of that matter. Otherwise, unless he wants to get in a lawsuit, and he doesn't need another lawsuit, so I would suggest—just a suggestion.

MR. ROSS: I understand, Judge, and we intend on doing that if we can work out what we think, you know, agree on what is due. Just briefly, for Nancy Ghidoni, intervenor, we have reviewed this final judgment. We have no objections to it. We would urge the Court to sign the judgment as—

THE COURT: You have given counsel a copy of this?

MR. CAMPAGNOLO: Yes, Your Honor, to all counsel.

THE COURT: Thank you very much.

As a general rule, the party seeking cancellation of an instrument must restore or offer to restore the other party to his preagreement position as a condition precedent. *See Johnson v. Cherry,* 726 S.W.2d 4, 8 (Tex. 1987); *City of New Braunfels v. City of San Antonio,* 212 S.W.2d 817, 822 (Tex.Civ. App.—Austin 1948, writ ref'd n.r.e.). A party will not be permitted to repudiate an instrument and, at the same time, retain the benefits received thereunder. *Cf. Arnold v. Wheeler,* 304 S.W.2d 368, 370 (Tex.Civ. App.—San Antonio 1957, writ ref'd n.r.e.). Where cancellation of a transaction results in a return of property to the plaintiff, the plaintiff must make reimbursement for equities arising out of such matters as the placing of valuable improvements on the property, *Wilson v. Martinez,* 74 S.W.2d 308, 311 (Tex. Civ.App.—El Paso 1934, no writ), as well as for repairs, taxes, etc., *Dean v. Dean,* 214 S.W. 505, 509 (Tex.Civ.App.1919, no writ).

The tender or offer of restoration must be continued and kept good and is not dispensed with by the institution of the suit. *See Davis v. Burkholder,* 218 S.W. 1101, 1103 (Tex.Civ. App.—Amarillo 1920, no writ). But no formal tender of restoration is required of one seeking cancellation. In fact, equity will require an offer to be made as a condition precedent, even if the pleadings have failed to do so, at the time cancellation is pronounced if the court has the proper parties before it as an exercise of its power to adjust their rights. *See Johnson,* 726 S.W.2d at 8; *see generally* 10 TEX. JUR. 3D, *Cancellation and Reformation* § 42 (1980), at 436–37.

Meehan suggests that the trial court has already addressed the situation and has concluded that restoration is not required. She offers numerous calculations in support of this conclusion, including offsets and other considerations which the court allegedly measured. The record belies Meehan's position because it is clear that the trial court delegated its responsibility to procedures outside the judgment despite the fact that questions of offsets,[27] credits, rentals, expenditures,

---

27. *See The Oriental v. Barclay,* 16 Tex.Civ.App. 193, 41 S.W. 117, 126–27 (1897) (no tender

necessary because restoration amount could be

fraud[28] and other factors[29] are addressed to the trial court's discretion in its quest to do fairness. *See Warren v. Osborne,* 154 S.W.2d 944, 946 (Tex.Civ.App.—Texarkana 1941, writ ref'd w.o.m.) (cast-iron rules do not govern courts of equity which require the flexibility to adapt to circumstances to prevent gross wrongs).

Therefore, I would sustain Ghidoni's sixteenth and seventeenth points of error because the trial court failed to properly address the reimbursement issue. I, however, would not address his eighteenth point of error because it has not been briefed in compliance with the briefing rules. There is but one sentence purporting to complain about trial court error. Neither argument nor authorities have been provided this court for a proper addressing of the contention. Moreover, the order complained about recites that a hearing was held and this court has not been favored with the court reporter's transcription of that hearing. For all the foregoing reasons, I would hold that the point of error has been waived.

### CONCLUSION

The portion of the judgment of the trial court in favor of Stone Oak and HCSA against Ghidoni should be reversed and that cause remanded for a new trial.

The portion of the judgment in favor of Meehan against Ghidoni should be

The judgment of the trial court should be affirmed in part and reversed and remanded in part. Because the majority does otherwise, I respectfully register my dissent.

**28.** *See Oar v. Davis,* 135 S.W. 710, 714 (Tex.Civ. App.—1911), *aff'd* 105 Tex. 479, 151 S.W. 794 (1912) (fraud by the defendant is a factor that may properly dispense with any necessity for restoration).

deducted from amount of damages found by the jury).

**29.** *See Hooks v. Brown,* 348 S.W.2d 104, 127–28 (Tex.Civ.App.—Austin 1961, writ ref'd n.r.e.)(defendant not entitled to restoration where the equities are not in his favor).